### FEDERAL YEAST CORPORATION v. FLEISCHMANN CO.

(Circuit Court of Appeals, Fourth Circuit. June 8, 1926.)

No. 2426.

1. Patents ⬀328.

Hayduck patent, No. 1,449,103, for yeast-making process, *held* valid and infringed.

2. Patents ⬀328.

Nilsson and Harrison patent, No. 1,449,127, for yeast-making process, *held* anticipated and invalid.

3. Patents ⬀9, 12.

An improvement of patented process or device may be patented, though patentee of neither original device nor improvement can use the other without the consent of its patentee.

4. Patents ⬀120—Proviso of Nolan Act held not to validate patent anticipated by foreign patent (Rev. St. § 4887 [Comp. St. § 9431]; Act March 3, 1921, §§ 1, 3 [Comp. St. Ann. Supp. 1923, §§ 9431a, 9431c]).

Nolan Act March 3, 1921, § 1 (Comp. St. Ann. Supp. 1923, § 9431a), extending rights of priority under Rev. St. § 4887 (Comp. St. § 9431), but providing that this shall not affect rights of citizens having rights under conflicting patents or applications, *held*, in view of

section 3, Act 1921 (Comp. St. Ann. Supp. 1923, § 9431c), not to validate patent in fact anticipated by foreign patent entitled to benefit of such extension.

Cross-Appeals from the District Court of the United States for the District of Maryland, at Baltimore; Morris A. Soper, Judge.

Patent infringement suit by the Fleischmann Company against the Federal Yeast Corporation. From a judgment for plaintiff (8 F. [2d] 186), holding one of the patents in suit invalid, defendant appeals, and plaintiff cross-appeals. Affirmed.

Charles H. Howson, of Philadelphia, Pa. (Howson & Howson, of Philadelphia, Pa., on the brief), for appellant and cross-appellee.

Leonard A. Watson, Julius M. Mayer, and Frederic P. Warfield, all of New York City (Mayer, Warfield & Watson, of New York City, on the brief), for appellee and cross-appellant.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

ROSE, Circuit Judge. The Fleischmann Company, appellee and cross-appellant, was the plaintiff in the District Court and the Federal Yeast Company, the defendant. We will refer to each of them by the position they there occupied.

The plaintiff is the owner of two patents both issued on March 20, 1923. The first, No. 1,449,103, was granted upon an application of Fred Hayduck, of Wilmersdorf, Germany, filed October 30, 1920, and the second, No. 1,449,127, upon that of Martin Nilsson and Norman S. Harrison, of Peekskill, N. Y. Their application was made as early as January 7, 1919. In our view, as in that of the learned District Judge, the infringement of each of these patents has been established. The controversy is as to their validity.

[1] Both of them are for yeast-making processes. In the opinion below, 8 F. (2d) 186, will be found a full, fair, and painstaking review of the evidence and of the contentions of the respective parties. It need not be here repeated. We have given careful examination to the record, and have considered the elaborate arguments, oral and printed, which have been submitted to us, and are satisfied the court below was right in holding the Hayduck patent valid. Henneberg and perhaps others of the earlier workers in the field may have come near the discovery described by Hayduck, but none of them made it. Some of them were among the most

highly skilled of the world's experts in the yeast-making art. They were in immediate and almost daily touch with the practical men of the industry, as well as with those who controlled the capital employed in it. They were on the outlook for every possible improvement in its methods. If they had known of the Hayduck process, they would have made prompt use of it.

[2] We pass to the consideration of the patent to Nilsson and Harrison. In our Patent Office, their application preceded that of Hayduck by almost two years. Nevertheless he was entitled to priority over them because as early as March 15, 1915, he had asked for a German patent for the same invention, and his American application by virtue of section 4887 of the Revised Statutes (Comp. St. § 9431), and of the Act of March 3, 1921, 41 Stat. 1313 (Comp. St. Ann. Supp. 1923, §§ 9431a–9431h), commonly called the Nolan Act, is to be treated as if it had been then made. At our bar, the defendant does not insist upon its earlier contention that Harrison was the sole inventor, and that the patent is consequently invalid, because issued for a joint invention of Nilsson and Harrison.

[3] If the validity of their patent is to be governed by the ordinary rules, the learned District Judge was clearly right in holding that, in view of the disclosures of Hayduck, their claims in suit cover nothing patentable. It was not until after the instant case was argued at our bar that the Supreme Court handed down its decision in Alexander Milburn Co. v. Davis-Bournonville Co., 46 S. Ct. 324, 70 L. Ed. ——. What was there said renders unnecessary any comment upon some of the contentions strenuously urged by the learned counsel for the plaintiff. It is now clear that, apart from the possible effect of any limitations or provisos of the so-called Nolan Act, Nilsson and Harrison were anticipated by the disclosures in the application of Hayduck, whether they were included in his claims or not. During the lifetime of a patent to A., B. may, of course, obtain a patent for an improvement on A.'s process or device. When that happens, B. cannot, without the consent of A., use what A. has patented, even though he adds his (B.'s) own improvement to it, and, on the other hand, A. may not, without B.'s permission, use B.'s improvement.

It would scarcely, however, be possible seriously to contend that, when Hayduck had patented a process for yeast making which prescribed the use of a sugar material and an inorganic ammoniacal compound having certain described qualities, Nilsson and Harrison could validly patent a process distinguished from that of Hayduck, merely by the fact that in it they recommended the use of one special sugar material and of a particular inorganic ammoniacal compound of the general class specified by Hayduck. The effect of giving them a patent would be to say to him, as well as to the rest of the world: You may not use one of the very kind of materials you have described, merely because your description, correctly so far as we know, included all of the class, and we have found that a particular member of that class can be advantageously used for the purpose you and we have in mind. In the facts here disclosed, there is nothing to make applicable such cases as that of the Incandescent Lamp Patent, 159 U. S. 465, 16 S. Ct. 75, 40 L. Ed. 221.

[4] The plaintiff answers that, even if so much be ruled against it, nevertheless the Nilsson-Harrison patent is validated by the express language of the first section of the Nolan Act, which provides that the extension of time for an application given by the act "shall in no way affect the right of any citizen of the United States who, before the passage" of the act, "was bona fide in possession of any rights in patents or applications for patent conflicting with rights in patents granted or validated by reason of such extension, to exercise such rights by itself or himself personally, or by such agents, or licensees, as derived their rights from it, or him, before the passage of" the "act, and such person shall not be amenable to any action for infringement of any patent granted or validated by reason of such extension." Section 1 (Comp. St. Ann. Supp. 1923, § 9431a). It says that it is a citizen of the United States within the meaning of the word as used in the proviso, and that at and before the passage of the act it was bona fide in possession of rights under the Nilsson-Harrison application, among which it claims was the right to prosecute that application to the issue of a valid patent thereon.

It contends that such must be the intent of the proviso of section 1, because in its understanding of section 3 (section 9431c) there would otherwise be no reason for it. That section declares that no patent granted or validated by reason of the extension provided for by the act "shall abridge or otherwise affect the right of any citizen of the United States, or his agent or agents, or his successor in business, to continue any manufacture, use, or sale commenced before the

passage of" the "act by such citizen, nor shall the continued manufacture, use, or sale by such citizen, or the use or sale of the devices resulting from such manufacture or use constitute an infringement."

The meaning of these two sections is clear. In view of the conditions brought about by the World War, Congress wished to extend the time in which applications for our patents might be made by any who had filed a prior application for a foreign one. It did not want to make it possible that an American citizen, who had previously become interested in any invention which might be monopolized by such a patent, should be prevented by its issue from making, selling, or using the invention. That interest might have been evidenced in one of two ways. The citizen might have obtained or might be seeking to obtain, a patent for the invention, or he might have begun to make, use, or sell it. In the former contingency he may rely upon the proviso to section 1; in the latter, he looks to section 3. Those entitled to avail themselves of either are in effect given a statutory license to make, use, and sell the invention covered by the patent. There is no hint of any purpose to do more, and certainly none that Congress wished to confer upon them any right to prevent the use of the invention by any one else.

If the plaintiff's contention could be sustained, one of two results would seem to follow, either the issue of a patent to the foreign applicant would be illegal in any case in which an American citizen had applied for or obtained a patent for the same invention, or there could be at the same time two valid outstanding patents for the same invention, the holder of each of which would have the right to proceed against infringers as the plaintiff, because of its ownership of the Nilsson-Harrison patent, is now seeking to do. It is a mere accident that it also holds that to Hayduck.

As between the litigants now before the court, there does not seem to be much of real substance in this controversy over the Nilsson-Harrison patent. The defendant in effect admits that it cannot use the process therein described without infringing the claims of the Hayduck. If they be valid, as we have found them to be, the plaintiff can get all the relief against the defendant it could obtain, if both patents were held valid and infringed.

Affirmed.