## SPERRY RAND CORP.

### v.

## KNAPP-MONARCH COMPANY.

### Civ. A. No. 19001.

United States District Court
E. D. Pennsylvania.
Sept. 28, 1960.
Sur Various Motions May 15, 1961.

Zachary T. Wobensmith, 2nd, Philadelphia, Pa., for plaintiff.

George J. Harding, 3rd, Philadelphia, Pa., Norman Lettvin, Bair, Freeman & Molinare, Chicago, Ill., for defendant.

KIRKPATRICK, District Judge.

In this civil action, the complaint asks for a declaratory judgment of invalidity and non-infringement of Knapp patent No. 2,253,037 for the cutting head as-

sembly of an electric shaver, issued to the defendant, Knapp-Monarch, on August 19, 1941. The answer controverts the complaint and asserts a counterclaim charging the plaintiff, Remington,[1] with infringement of the patent. The patent expired on August 19, 1958, and the counterclaim asks only for damages from May 16, 1949, to the date of the patent's expiration without injunctive relief.

Remington has been making electric shavers since 1934 and is one of the largest manufacturers in the country. Knapp-Monarch started to make electric shavers in the fall of 1937, discontinued making them in 1941 at the beginning of World War II and has never resumed.

The claims in suit are 1, 5, 11 and 13. They all relate to a well known type of shaver in which the cutting of the hair is accomplished by the reciprocating movement of a slotted inner cutting plate against a slotted outer cutting plate, the latter presenting a flat shaving surface to the face. Although each of the claims in suit necessarily (in order to cover an operative cutter head) contains a number of elements, Knapp-Monarch specifies as the contribution of Claims 1, 5 and 11 to the technology of dry shavers a construction by which the cutter plates can be stamped from very thin sheet metal rather than of bar stock which requires machining—a comparatively expensive operation.[2] The way in which the patent purports to accomplish this is reinforcing the outer plate against bending or bowing by a rib extending along its middle portion between the cutting slots, the rib being described in Claims 1 and 11 as "an imperforate rib" and in Claim 5 merely as "a rib". In the patent drawings the rib usually takes the form of a longitudinal inward bend or channel in the generally flat surface of the plate. Claim 13 does not mention the rib and will require separate consideration.

Claim 1 is as follows:

"In a dry shaver cutter head, an outer cutter and an inner cutter, said outer cutter comprising a plate of uniform thickness bent substantially U-shape, means for rigidly connecting the arms thereof in spaced relation to each other, said plate, across the bends thereof, having notches formed therein whereby to provide cutter teeth to coact with said inner cutter, and an imperforate rib formed along the center of the connecting portion of said U-shaped plate of metal having the same thickness as the plate, said teeth terminating short of said rib."

Claim 5 supplies details of the inner cutter, describing it as having a back, a pair of side flanges and a pair of terminal slotted coplanar end flanges terminating spaced from each other. Claim 11 adds the feature that the inner cutter makes shearing contact with the teeth of the outer cutter on the flat face-contacting surface only.

A preliminary question arises in dealing with the prior art cited by Remington. The bulk of it consists of some 13 patents of which all but three issued subsequent to April 1936.[3] There are also

1. After the commencement of the suit, Sperry Rand Corp., successor by merger to Remington Rand Inc., original plaintiff, was substituted as plaintiff. However, in this opinion the plaintiff in this case will be referred to throughout as "Remington".

2. Knapp-Monarch brief, page 50 et seq.

3. Patent No. 2,141,582 to Wimberger issued December 27, 1938, upon an application filed in this country October 29, 1936. However, the same invention was the subject of an application in Austria for

a patent filed February 15, 1936. Knapp-Monarch argued that, in spite of the earlier filing date of the Austrian application, the consideration of the patent must be confined to its filing date in this country. However, Section 119 of Title 35 U.S.C. provides that an application for a patent in this country, filed by one who has previously filed an application for the same invention in a foreign country, "shall have the same effect as the same application would have if filed in this country on the date on which" the foreign application was filed. I fully agree with Remington that this section

two shavers offered in evidence both of which antedate April 1936.

The date of the Knapp patent application was November 6, 1937. However, in the course of its prosecution in the Patent Office, the applicant, in order to swear back of a reference (Kendall No. 2,104,929) cited by the Examiner, filed two affidavits fixing April 1936 as the date of his reduction to practice, on the strength of which affidavits the Examiner dropped Kendall as a prior art reference, and the allowance of the application with 16 claims followed.

The effect of this action of the Examiner, if valid, would be to eliminate all the patents cited by Remington, except the three referred to, from consideration upon the question of the obviousness of the invention under 35 U.S.C. § 103.[4]

Remington contends that the Examiner's acceptance of April 1936 as Knapp's filing date was in violation of the Rules of the Patent Office and must be disregarded in this proceeding. Rule 75, then in force, as interpreted by the current Patent Office Manual of Procedure, provided that the affidavit must state facts and produce documentary evidence and exhibits in support thereof.

Knapp's affidavit did state facts, though not as fully as a strict application of the rule would require. He did not produce documentary evidence and exhibits but stated that he and his attorneys had such evidence, described it and stated that it was available for inspection.

It is not the province of this Court to decide whether or not the Office in its discretion should accept tender of production of a fully described exhibit as the equivalent of its actual production or to decide whether facts stated in an affidavit are satisfactory and sufficient for the office to take action upon.

■■ The requirements of the then Rule 75 were promulgated under statutory authority, but they are not part of the statute and the Patent Office is the proper tribunal to interpret and apply its own rules. The presumption of regularity and legality, which attaches to the proceedings of administrative bodies generally, applies to action taken by the Patent Office in pursuance of its rules. In the present case no evidence whatever has been offered to controvert the finding upon which the Examiner acted and the prima facie case thus established. The action of the Patent Office is at least quasi judicial and I think that it cannot be set aside in a collateral attack unsupported by any evidence. I, therefore, will not consider references having filing dates later than April 1936.

Still confining the discussion to Claims 1, 5 and 11, none of these claims disclose patentable novelty over Fourniols and Gaiztarro.

In view of the chief object of the invention and of what Knapp-Monarch says is its contribution to the art, its most important element is the reinforcing rib which appears in both of the patents referred to in the form of the same longitudinal inward bend or channel claimed by the Knapp patent. Fourniols shows the cutting slots stopping short of the first side of the channel, thus leaving the rib imperforate. In Gaiztarro the cutting slots go all the way across the cutting surfaces on either side of the head and extend into the sides of the channel. This prevents the channel from being properly described as "imperforate" and so prevents Gaiztarro from being a complete anticipation. However,

gives a status to an application, as distinguished from a mere benefit to an applicant, based on the foreign filing. This status is not limited in its effects to the particular applicant involved. Consequently, the Wimberger patent must be considered. If the consideration must be limited to validity under Title 35, Section 102(e), then it is clearly not a complete anticipation of the Knapp patent. Its consideration as prior art will be taken up later in the opinion.

4. I find no prior patent which is such a complete anticipation as would make it a reference under Section 102(e) as of its filing date.

it is difficult to see how, if greater rigidity in the outside cutter were desired, it would not be obvious to omit the slots in the sides of the channel.

The only substantial distinction between Gaiztarro's inner cutter and that of the Knapp patent is that Gaiztarro's rows of cutting teeth are joined in the same manner as the teeth of the outside cutter, whereas Knapp omits the portion which joins them, leaving the cutting surface of the inner cutter to consist of two coplanar flanges turned inward and spaced apart. It must be remembered in this connection that the patent is for a head assembly and not for the method of manufacturing it, and it seems to me that, if it was desired to simplify the manufacture of Gaiztarro's inner cutter, it would be obvious to omit the central portion of it.

Each of the other elements of the three claims under consideration are to be found in either Fourniols or Gaiztarro or in both. Thus, each of these prior art patents has an outer cutter consisting of a plate bent into U-shape, and Gaiztarro shows the arms of the "U" rigidly connected in spaced relation to each other. Both patents show an inner cutter (Claim 1 of the Knapp patent), a movable cutter within the outer plate, provided with spaced teeth on opposite sides of the ribs making shearing contact with the slotted portions of the outer plate on the flat surface only thereof. (Claim 11). Gaiztarro shows an inner cutter with a back. (Claim 5). Fourniols' inner cutter has a pair of terminal coplanar end flanges with teeth coacting with the teeth of the outer cutter. (Claim 5). Both patents show outer cutter plates bent inward to form a flat skin-contacting surface. (Claim 11). Neither show such cutter first bent outwardly. However, this is certainly a point which is too fine to rest patentability upon, being really a mere matter of design so far as the three claims being discussed are concerned.

If the use of stamped sheet steel for the cutting plates is considered as part of the patented structure rather than part of the process of manufacture, it is fully disclosed by Fourniols. Although Gaiztarro does not mention the material, his structure, with its reinforcing rib, adapts itself to stamped sheet metal, but I do not think that any claim can be sustained upon the ground of its structure's adaptability to the use of sheet metal. Sheet metal is not truly a different material from any other metal which has been reduced by any process to the same degree of thinness. The only importance of sheet metal stamping is low cost of the process by which the desired shape is achieved, and the patent is not for a process. Of course, if the rib is what makes the use of sheet metal possible, it is proper enough to point this out in the specification. However, the rib was old in shaver cutting plates.

Claims 1, 5 and 11 thus consist of a number of old elements brought together, none of which performs any new function and each of which operates just as it did in the old structure from which it was taken. Combining them in the way in which they are put together in the patent establishes no new functional relationships among them. The result may or may not be an improvement over the prior art but it is obtained by an obvious assembling of old elements.

Claim 13 stands on a different basis. Generally speaking, it calls for a U-shaped outer cutter and does not mention any rib. It calls for bulging corners on the outer cutter and inner cutter which is spaced from the interior of these bulging corners, the purpose being to enable the slots in the bulges to provide a comb-like action prior to the cutting of the hair.

I do not find this or a similar structure in any of the patents antedating April 1936. Remington strongly urges that the Wimberger patent discloses it, but I cannot agree. The corners of the almost imperceptibly concave sides of the "U" in Wimberger can hardly be described as "bulging a substantial distance beyond a normal U-shape" and, of course, the shearing portions are not welded to the inner walls of the rounded corners of

the outer cutter. Naturally, there has to be in this as in all similar shavers some separation for the movement of one plate under the other. I suppose a thousandth of an inch is a "space", but that is not what Knapp meant in Claim 13 and it will not produce a combing action. Even assuming that it can be considered under Section 103 as prior art, I do not think that Wimberger even remotely suggests this feature of Claim 13. Nor does the structure of Claim 13 appear in the prior art shavers in evidence. I do not think that it can be called an obvious expedient.

Just how great an advantage is obtained by this advance combing action is not very clearly brought out in the testimony. It may be of more value in connection with women's shavers which are more likely to encounter long hairs and thus benefit from combing more than men's. At any rate, the patent is presumed valid and the result, thus fortified, may be taken to constitute a contribution to the art.

■ I, therefore, find Claims 1, 5 and 11 invalid as being either mere aggregations or as obvious combinations of old elements. I find Claim 13 valid.

Now, as to infringement: taking the Remington L–10 and T–10 heads as representative of Remington's commercial production,[5] both of these heads are, in practice, made of sheet metal and consist of an outer and inner cutter. The construction of both the inner and outer cutter of both heads may be described as being substantially U-shaped with means for rigidly attaching the arms of the "U" together.

The L–10 head has teeth cut across the outside corners of both outer and inner cutters as in the claims of the Knapp patent. It also has a longitudinal indented portion in the center of the head which could be described as a rib. However, in the L–10 teeth are also cut into the corners formed between the flat portion of the head and the vertical walls of this rib. Thus it presents two rows of cutter teeth to the beard each time it is passed across the face in either direction. This construction does not infringe Claims 1 and 11 of the Knapp patent since these claims call for an imperforate rib and require that the cutter teeth stop short of the central rib. The slots by which the teeth are formed make a series of holes in it, though not the round ones which one usually thinks of as perforations. However, the word "imperforate" excludes holes of any shape.

Moreover, Claim 1 calls for a plate of uniform thickness, and the teeth of the accused structure are lapped, thus destroying the plate's uniformity of thickness. It is true that the specification in Knapp refers to the fact that, in practice, the teeth are lapped and thus slightly thinned. The specification, therefore, contradicts Claim 1 and, though we may look to a specification to determine what is taught by a patent, the claims are what determine the bounds of the monopoly.

Neither does the L–10 head infringe Claim 5. This claim calls for both an outer and an inner cutter. The inner cutter is described as having coplanar end flanges with a space between them. The inner cutter teeth are cut into these flanges and the space between is arranged to avoid the walls of the rib of the outer cutter. On the other hand, the inner cutter of the L–10 head is substantially a duplicate of the outer cutter used with it. It has a central rib joining two rows of teeth which are cut into the sides of the rib as well as teeth on the outer corners to coact with the corresponding teeth of the outer cutter. This construction is quite different from the Knapp construction. Knapp apparently had in mind and claimed a construction that could be stamped in its entirety from sheet metal and, therefore, for his inner cutter omitted any portion joining the arms of the "U", at the same time utilizing the space thus afforded to avoid the central rib of his outer cutter. It appears to me that it

5. The parties agreed that they were.

would do violence to Knapp's claims to consider the rib of the L–10 inner cutter an equivalent of the open space deliberately provided by Knapp.

For the same reason that the L–10 escapes infringement of Claim 5, it does not infringe Claim 11.

In addition Claim 5 does not refer to the rib as imperforate. Any expansion of this claim by the use of equivalents which would allow teeth to extend into the walls of the rib and allow the joinder of the flanges of the inner cutter (as in the Remington L–10) would invalidate the claim as being almost identically the structure of Gaiztarro.

As has been stated, Claim 13 requires that the outside corners of the U-shaped outer cutter shall extend substantially beyond a U-shape, in other words, bulge, and that the inner cutter (not described) shall have its shearing portions spaced away from this bulge. The L–10 construction does not have this feature and, therefore, does not infringe Claim 13. The only clearance which it has between the inner and outer cutter is that which is necessary to allow reciprocal motion of the inner cutter. This is inherent in every shaver head which consists of an inner and outer cutter. Otherwise, such heads would be inoperable.

The Remington T–10 head, used commercially on its Princess shaver, is made so that the outside edge of the outer cutter bulges more than the other edge. The inner cutter does not have a corresponding bulge, so that the shearing teeth are offset from this bulge. The head does contain a central rib which is toothed as in the L–10 head and the corner of the outer cutter that is opposite the bulge is bent substantially at a right angle. The inner cutter is substantially that of the L–10.

The T–10 head does not infringe Claims 1, 5 or 11 of the Knapp patent for the same reasons that the L–10 head did not infringe them. However, Claim 13 of the Knapp patent reads directly upon the T–10 head except that its bulge is on only one side of the outer cutter head.

In commercial practice, Remington's "Princess" shaver consists of two T–10 heads, back to back, so that a bulged outer cutter is present on each side of the complete shaver. I do not think that infringement can be avoided by the omission of the bulge on the inside of each of the two cutting heads. The T–10 head as employed by Remington clearly carries out the purpose and intent of the invention in the manner claimed in the patent.

█ I find that Claims 1, 5, 11 and 13 of the Knapp patent are not infringed by the L–10 and that Claims 1, 5 and 11 are not infringed by the T–10 head, and I further find that Claim 13 is infringed by the T–10 head.

An order for judgment in accordance with the foregoing opinion may be submitted.

### Sur Various Motions.

Now before the Court are:

1. The plaintiff's proposed requests for findings of fact and conclusions of law,

2. The defendant's motion to strike the plaintiff's proposed findings,

3. The defendant's motion for additional findings,

and

4. The defendant's motion for judgment.

The first question presented is whether the affidavit filed by Knapp under the then Rule 75 of the Patent Office is sufficient to carry Claim 13 back to April 1936, the date given to it by the Examiner. At the argument, counsel for the defendant conceded that inasmuch as the affidavit did not specifically refer to the bulge of Claim 13, on which I predicated patentability, it was insufficient to carry that claim back to a date earlier than the application. Whatever doubts I may have had about this proposition, I see no reason to express them here inasmuch as the point was conceded.

█ There is, however, another reason why the patent cannot be given the earlier date. At the trial the defendant's

counsel assured the Court that, on this point, the case was one of first impression, an assertion which was tacitly acquiesced in by the plaintiff's counsel, a patent lawyer of wide experience. The latter now, for the first time, produces weighty authority which I think requires me to reverse my holding and to find that, regardless of the sufficiency of the affidavit to support the Examiner's action, it was incumbent upon the defendant, asserting the earlier date, to produce strong and convincing evidence in support of the date claimed. The defendant produced no evidence whatever at the trial but relied upon the presumption of validity arising from the issuance of the patent. I thought that this was enough, but apparently it is not. All the references are, therefore, properly to be considered upon the issue of patentability.

The other question is whether there is sufficient evidence in the record to show that the T–10 head was produced or marketed prior to April 18, 1956, the date of the filing of the counterclaim.

■ The trial was conducted, arguments had, and briefs filed. The issue concerning the T–10 head and Claim 13 was fully and completely litigated before the Court without objection on the part of counsel for the counterclaim defendant. In fact, the counterclaim defendant was the party who introduced the T–10 head, claiming that it did not infringe. Under these circumstances, the provisions of Rule 15(b), Fed.Rules Civ. Proc. 28 U.S.C. are particularly appropriate, and I, therefore, conclude that the issue of infringement by the T–10 head is properly before the Court.

None of the references cited against Claim 13 claim or disclose the bulge, spaced away from the inner cutter. The earlier Knapp patent, 2,198,118, specifies that the inner cutter is "substantially filling" the space between the two plates. What was said about the Wimberger patent in my opinion applies to that patent as well, namely, that any space allowed between the inner and outer cutter is no more than is absolutely necessary to permit reciprocation of the inner cutter and make the shaver operative.

Kendall, 2,104,929, does not extend the teeth around the corner of the bulge but terminates them in a longitudinal slot at the edges of his flat portion. The inner cutter is so designed as to co-act with the teeth on the flat portion and there is no comparable offset of the inner cutter from the corners providing the combing action called for by Claim 13, even if the omission of the extension of the slots over the bulge be disregarded.

I have examined the other references cited as prior art and do not find the structure of Claim 13 of the patent before me disclosed in any of them. What was said about Wimberger in the opinion applies to all of them. They all contain only enough space between the inner and outer cutter to allow the device to be operable, which is not what Claim 13 means when it describes the inner cutter as "spaced away" from the interior of the bulging corners. In addition, in examining the patents, it must be borne in mind that Knapp did not invent the idea of combing hair in order to direct it into the slots, nor does he claim that in Claim 13. Claim 13 is directed towards a specific structure intended to accomplish this result, and this structure is not obvious from the disclosures of the prior art.

Finally, counsel for the plaintiff has treated the issue as though the feature that lent patentability to Claim 13 was the bulge in the outer cutter plate. In many of the patents which he cited, the only anticipating element was a similar bulge. I thought that I had made it clear in the opinion that patentability was awarded Claim 13 on the basis of the bulge plus the position of the inner cutter, spaced away from the curved notched corners of the bulge.

All the other matters raised by the proposed findings and conclusions have been adequately dealt with in the opinion, and I see no reason to take any action upon them, and they are not answered.

Judgment for the defendant is entered herewith.