**COMMONWEALTH OF AUSTRALIA,**
Plaintiff-Appellant,

v.

**RADIO CORPORATION OF AMERICA,**
Defendant-Appellee.

No. 178, Docket 31737.

United States Court of Appeals
Second Circuit.

Argued Nov. 15, 1967.

Decided Sept. 5, 1968.

Alan K. Roberts, New York City, for plaintiff-appellant.

John Farley, New York City, A. Russinoff, Princeton, N. J., for defendant-appellee.

Before WATERMAN, FRIENDLY and SMITH, Circuit Judges.

WATERMAN, Circuit Judge:

The sole issue before the court on this appeal is whether the district court below was correct in holding that the civil action brought pursuant to 35 U.S.C. § 146 by appellant as a party dissatisfied with a decision of the Board of Patent Interferences on the question of priority, was commenced out of time under the terms of Section 146. In so holding the court granted appellee's motions for dismissal under Fed.R.Civ.P. 12(b) and for summary judgment under Fed.R. Civ.P. 56. We reverse and remand to the district court for further proceedings.

On September 11, 1962, a patent was issued to one Greig, assignor of appellee Radio Corporation of America (RCA), directed to a liquid developer for use in electrostatic developers and particularly to a certain liquid to be used in the developer. On February 19, 1963, a patent was issued to K. Metcalfe and R. Wright, assignors of appellant Commonwealth of Australia (Australia), also directed to a liquid developer for electrostatic development, but directed specifically to a cooperating combination of a liquid carrier, pigment particles, and other agents. Thereafter, on June 18, 1963, Greig filed a reissue application; he offered to surrender his original patent but requested that the patent be reissued to him inclusive of the patent claims previously granted to Metcalfe and Wright, and he simultaneously asked that an interference proceeding, i. e., a Patent Office proceeding to determine which of two or more parties is entitled to a patent claim, be declared between the Metcalfe-Wright patent and the Greig reissue application. An interference, No. 94,531, was so declared and the Patent Office examiner decided it in favor of Greig on the theory that the features specifically expressed in the Metcalfe-Wright disclosure had been inherently expressed in the Greig disclosure. Thereupon, jurisdiction in this matter passed from the examiner to the Board of Patent Interferences and that Board declared the interference proceedings terminated on September 2, 1966.

At this point, Metcalfe and Wright could: (1) file an appeal within 60 days to the Court of Customs and Patent Appeals under 35 U.S.C. §§ 141, 142, and Patent Office Rule 304, 37 C.F.R. § 1.304; or (2) bring a civil action within 60 days in the United States District Court as provided in 35 U.S.C. § 146, and Patent Office Rule 304, 37 C.F.R. § 1.304; or (3) file a request within 30 days for reconsideration of the Patent Office decision under Patent Office Rule 256(b), 37 C.F.R. § 1.256(b). Metcalfe and Wright rejected alternative (1) and filed, on October 17, 1966, a request for reconsideration of the Patent Office decision while at the same time filing a motion for leave to take testimony in the Patent Office.[1] This was the first of a series of petitions, counter-petitions, and rulings in the Patent Office, all of which are important in the determination of this case. We now set out these moves. On October 26, 1966, Greig filed a memorandum in opposition to both the request and the motion. Both were finally denied by the Patent Office on December 6, 1966, because, *inter alia,* they had been late-filed. Twenty-two days later, Metcalfe and Wright sought a suspension of proceedings in the Patent Office so as to afford themselves time to study jurisdictional and venue problems thought necessary to be resolved before commencing a civil action in the federal courts. The action was com-

---

1. Metcalfe and Wright desired to put in scientific testimony which would demonstrate that what the Patent Office examiner had assumed to be inherent in the Greig disclosure had no basis in fact.

menced by Australia [2] in the Southern District of New York on January 4, 1967, and, on January 6, 1967, the First Assistant Commissioner of Patents denied the suspension of proceedings sought by Metcalfe and Wright, but he did extend to February 6, 1967, their time for filing suit in the district court. Greig, on January 16, 1967, filed a petition in the Patent Office requesting that the extension to February 6 be vacated; this petition was denied on February 9, 1967. With this history in mind, we turn to the provisions of the relevant statutes and of the Patent Office rules.

35 U.S.C. § 146 provides that any party to a patent interference proceeding who is "dissatisfied with the decision of the board of patent interferences on the question of priority" has a remedy by civil action in the United States District Court. Such an action must be commenced "within such time after such decision, not less than sixty days, as the Commissioner appoints." 35 U.S.C. § 146. In Patent Office Rule 304, the Commissioner has designated the statutory sixty-day minimum period as the maximum period for commencing a civil action, except where "a petition for rehearing or reconsideration is filed within thirty days after the date of the decision of the * * * Board of Patent Interferences," in which event the time is extended to thirty days after action on the petition. 37 C.F.R. § 1.304.[3]

Here, although a petition for reconsideration was filed, it was not filed until 45 days after the date of decision of the Board of Patent Interferences and hence was filed 15 days after the period contemplated in the exception provided in Patent Office Rule 304, supra, had expired. If the effect of the filing of this petition for reconsideration, untimely for purposes of Rule 304, were all that were involved in this case, the district court would have been correct in refusing to entertain this action filed on January 4, 1967, for appellant's time to commence its action in the district court would have run out on November 1, 1966.

However, appellant advances the contention, apparently a novel one in both the Patent Office and the courts, that the time limitation set forth in Rule 304 is not decisive in this case. Appellant argues that inasmuch as a motion to take testimony in the Patent Office was also filed here the Board of Patent Interferences retained jurisdiction until the Board ruled on that motion. As this situation was apparently neither contemplated nor covered by the provisions of Rule 304, which by its terms deals only with petitions for rehearing or reconsideration, appellant submits that Rule 304 is inapplicable. Appellant contends that as there is no Patent Office rule specifically limiting the time within which a district court action must be commenced after a Patent Office decision upon a motion of the nature of appellant's motion, the maximum time permitted for filing the district court

2. The civil suit authorized under 35 U.S.C. § 146 need not involve the same parties as did the interference proceedings in the Patent Office; by the terms of § 146 it is permissible for the real parties in interest to be the named parties in the district court action. Here, of course, Australia and RCA are the real parties in interest, the former being assignee of Metcalfe and Wright, and the latter being assignee of Greig.

3. The pertinent part of 37 C.F.R. § 1.304 reads:

§ 1.304 Time for appeal or civil action

The time for filing the notice and reasons of appeal to the U. S. Court of Customs and Patent Appeals (§ 1.302) or for commencing a civil action (§ 1.303) is sixty days from the date of the decision of the Board of Appeals or the Board of Patent Interferences. If a petition for rehearing or reconsideration is filed within thirty days after the date of the decision of the Board of Appeals or Board of Patent Interferences, the time is extended to thirty days after action on the petition. No petition for rehearing or reconsideration filed outside the time specified herein after such decision, nor any proceedings on such petition shall operate to extend the period of sixty days hereinabove provided. * * *

action must be fixed by the Commissioner pursuant to the power conferred upon him by 35 U.S.C. § 146, a power which is delegable under 35 U.S.C. § 3 to any Assistant Commissioner.

Bottomed upon this contention appellant concludes that its action in the district court was timely filed because the First Assistant Commissioner, in his paper of January 6, 1967, appointed that the time for filing should run until February 6, 1967. Appellee advances the argument that was relied upon by the district court when it held below that appellant's action was time-barred, i. e., that the motion to take testimony was not an independent motion but was ancillary to the petition for reconsideration and that, in fact, the testimony appellant sought to take was to be used in support of that very petition for reconsideration; therefore any disposition of the motion was really a "proceeding" on the petition for reconsideration. Appellee then notes that Rule 304 specifically provides that no petition for rehearing or reconsideration filed outside the time specified (30 days), "nor any proceeding on such petition shall operate to extend the period of sixty days * * *." [4] and thereby it claims that the present case is covered by Rule 304 and that appellant's action was thus time-barred.

■ While we find each of these opposing analyses logical, we need not pass upon their validity other than to observe that they provide a backdrop for our own discussion and for the result we reach. We hold that appellant should have a hearing in the district court on the merits of its action. It is apparent to us that the novelty of finding a motion to take testimony appended to a petition for reconsideration caused the Board of Patent Interferences to deliberate for a longer time here than it would ordinarily have deliberated before rejecting a petition for reconsideration which had obviously been filed belatedly. Surely it would not ordinarily take the Board

50 days to reject a petition on the ground of late filing. Even if the above were not apparent to us, we would at least have to take note of the fact that the lengthy deliberation of the Board of Patent Interferences upon the petition for reconsideration and appended motion was a major factor in the First Assistant Commissioner's decision to extend to February 6, 1967, the time within which an action might be commenced in the district court. In his denial of Greig's petition of January 16, 1967, seeking reconsideration of the First Assistant Commissioner's decision of January 6, 1967, the First Assistant Commissioner said:

"However, the petition also included a request for leave to take testimony, and the decision of the Board on the petition was four pages in length as compared with an original decision [on the interference itself] of one page. * * *

"Upon consideration of the entire situation as now presented, it is concluded that the time for seeking court review should remain as fixed by the decision of January 6, 1967, even if the petition filed by Metcalfe et al. be regarded as not, technically, extending that time. It is thought that Metcalfe et al. should not be deprived, on a purely technical ground, of the right to put their case before an appropriate court for such consideration as the court considers proper."

Thus it seems that in extending appellant's time to file until February 6, 1967, the First Assistant Commissioner was relying upon Patent Office Rule 183, "Suspension of Rules," which provides:

In an extraordinary situation, when justice requires, any requirement of the regulations in this part which is not a requirement of the statutes may be suspended or waived by the Commissioner in person on petition of the interested party, subject to such other requirements as may be imposed. 37 C.F.R. § 1.183.

4. See Footnote 3, supra.

This was a proper exercise of the Commissioner's power for it has been held that his power to suspend requirements of the Patent Office Rules when justice requires may be exercised to suspend or waive the sixty day limit of Rule 304, Eckey v. Watson, 106 U.S.App.D.C. 16, 268 F.2d 891, 892 (1959) (*per curiam*). And see Application of Reese, 359 F.2d 462, 463 n. 2 (C.C.P.A.1966) (dictum).

■ Appellee apparently does not contend that this case is one in which a finding that "justice requires" that Rule 304 be suspended is an erroneous finding. Its contention is that the First Assistant Commissioner did not possess the requisite power to invoke Rule 183 because that rule, by its terms, may be invoked only by the "Commissioner in person." 37 C.F.R. § 1.183. The district court below agreed with appellee and held that the language "Commissioner in person" authorizes no one but the Commissioner himself to suspend or waive the 60-day period.

There appears to have been but one case dealing with the construction of the phrase "Commissioner of Patents in person." United States ex rel. Stapleton v. Duell, 17 App.D.C. 575, 1901 C.D. 359 (Ct.App.1901), was an appeal in an action brought to mandamus the Commissioner of Patents to hear an appeal in an interference proceeding. The appeal taken within the Patent Office in the interference proceeding had been to the Commissioner of Patents "in person," [5] but had been heard and decided adversely to petitioner by the Assistant Commissioner, who had reversed a previous decision favorable to petitioner by the Board of Examiners in Chief. Petitioner then sought to have a District of Columbia court set aside the decision by the Assistant Commissioner and to order the Commissioner to hear the appeal. The lower court refused to issue the writ of mandamus and the Court of Appeals affirmed the lower court. In so affirming, the Court of Appeals relied heavily upon the history of the patent statutes and the history of changes in the organization of the Patent Office. The court noted that at the time the statute containing the language "Commissioner of Patents in person" was passed, the office of Assistant Commissioner did not exist. When the office of Assistant Commissioner was established, no attempt was made to revise the statutes in order to take into account that change in the organizational structure of the Patent Office. The *Stapleton* court concluded that the statute providing for appeals to the Commissioner in person should not preclude the Assistant Commissioner from handling appeals inasmuch as no position of Assistant Commissioner existed at the time the statute providing for appeals had been adopted.

Appellee points out to us, however, that the historical and organizational facts are distinctly different now. The position of Assistant Commissioner did exist when Rule 183, 37 C.F.R. § 1.183, went into effect on March 1, 1949. Therefore, appellee urges, the language "Commissioner in person" must have been intended to mean that only the Commissioner himself could invoke Rule 183.

Although this may appear to be a weighty argument to support appellee's contention we perceive that there are other factors which bear on the construction of the term "Commissioner in person" as the phrase is used in Rule 183. First there is the consideration that, in promulgating Rule 183, the Commissioner may have relied upon the general thrust of the *Stapleton* case that an assistant commissioner might also exercise power granted to the "Commissioner in person." Second, there is the language in 35 U.S.C. § 3, defining the duties of assistant commissioners,

5. At the time of the *Stapleton* case appeals from the decision of the examiners-in-chief could "be taken to the Commissioner of Patents in person." Act of March 2, 1861, 12 Stat. 246; this procedure was discontinued in 1927 and has not been revived. 44 Stat. 1335, 1336 (1927).

that "the assistant commissioners shall perform the duties pertaining to the office of commissioner assigned to them by the Commissioner." Because the extension of time granted by the First Assistant Commissioner on January 6, 1967 was granted upon appellant's December 28, 1966 petition for suspension of proceedings, which petition was addressed to the *Commissioner of Patents*, it is reasonable to assume that the Commissioner assigned to his First Assistant the duty of considering that petition and therefore reasonable to assume that the Commissioner believed that the First Assistant Commissioner had full power to take whatever action might be appropriate upon that petition. Third, appellant on its part alleges, and appellee does not contradict appellant, that it has been the practice of the Patent Office for the assistant commissioner to grant Rule 183 relief. Cf. Goodyer v. Brush, 104 U.S.P.Q. 346, 347 (Commissioner of Patents 1954); Ex Parte Bueche-Rosse, 100 U.S.P.Q. 439 (Commissioner of Patents 1954). Fourth, it has been held that assistant commissioners may invoke Trademark Practice Rule 148, 37 C.F.R. § 2.148, allowing "the Commissioner" to suspend or waive any requirement of those rules when justice requires.[6] Land O'Lakes Creameries, Inc. v. Oconomowoc Canning Co., 199 F.Supp. 124 (E.D.Wis. 1961). This trademark practice rule is analogous to Patent Office Rule 183, and, although the two rules are not drafted in precisely the same terms, we find no justification for distinguishing between patent procedure and trademark procedure insofar as an assistant commissioner may have power to waive or suspend the requirements of rules of practice. We believe no such distinction was intended.

■ At the very least, the language "Commissioner in person" in Patent Office Rule 183 is ambiguous. There-

fore, it is desirable that courts should defer to the construction which the Patent Office, the promulgator of the rule, has placed upon the language. On a matter relating to its internal organization the Patent Office is the proper tribunal to interpret and apply its own rules. Sperry-Rand Corp. v. Knapp-Monarch Co., 193 F.Supp. 756, 758 (E.D. Pa.1960), aff'd in part and rev'd in part, 307 F.2d 344 (3 Cir. 1962). Cf. In re Moss, 101 F.2d 536, 540–541 (C.C.P.A. 1939). The Patent Office has interpreted Rule 183 so that the assistant commissioners as well as the Commissioner may utilize Rule 183.

■ Appellee further contends that if we should agree with appellant that the First Assistant Commissioner had the power to extend appellant's time to commence his district court action and that he did so extend that time, the district court was correct in refusing to entertain the action. First, appellee suggests that the First Assistant Commissioner's decision of January 6, 1967 commenced a new term within which appellant could bring his civil action. Thus it is suggested that appellant could have filed its complaint between September 2, 1966 and November 1, 1966 or between January 6, 1967 and February 6, 1967, but at no other time; thus, because appellant filed on January 4, 1967 its action was not timely filed. However, this is not the sense of the First Assistant Commissioner's action of January 6, 1967. That decision purported to "reset" appellant's time for instituting an action "to expire" on February 6, 1967. This order only set an expiration date, it did not indicate that the action could only be commenced in court within a period 30 days prior to the expiration date. Moreover, this order is consistent with the provision of 35 U.S.C. § 146 which sets up an open-ended period for the filing of an action in the district court and

---

**6.** 37 C.F.R. § 2.148 reads:

§ 2.148 Commissioner may suspend certain rules

In an extraordinary situation, when justice requires and no other party is injured thereby, any requirement of the rules in this part not being a requirement of the statute may be suspended or waived by the Commissioner.

leaves it to the Commissioner to appoint the final date "within" which the action must be brought. This language suggests a continuum, not a broken series of periods within which court actions may be commenced.

Second, appellee would have us hold that neither the Commissioner nor any of his assistants had authority to validate the district court complaint by the January 6, 1967 Patent Office decision because the claim in issue in the court litigation had been canceled from the Metcalfe patent pursuant to 35 U.S.C. § 135(a). That section specifies, in pertinent part:

> A final judgment adverse to a patentee *from which no appeal or other review has been or can be taken or had* shall constitute cancellation of the claims involved from the patent, and notice thereof shall be endorsed on copies of the patent thereafter distributed by the Patent Office. 35 U.S.C. § 135 (a). (Emphasis supplied.)

In view of the language emphasized in the portion of the statute quoted, appellee's reasoning is obviously circular and this last contention, as those heretofore discussed, is also without merit.

The judgment is reversed and the cause remanded to the district court for further proceedings consistent with this opinion.