53 CCPA

**Application of Hans HILMER, Gerhard Korger, Rudi Weyer and Walter Aumuller.**

**Patent Appeal No. 7482.**

United States Court of Customs and Patent Appeals.

April 28, 1966.

Rehearing Denied July 28, 1966.

Worley, C. J., dissented.

Eugene O. Retter, John Kekich, Kalamazoo, Mich., George E. Frost, Chicago, Ill., Henry W. Koster, New York City, for appellants.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

RICH, Judge.

The sole issue is whether a majority of the Patent Office Board of Appeals erred in overturning a consistent administrative practice and interpretation of the law of nearly forty years standing by giving a United States patent effect as prior art as of a foreign filing date to which the *patentee* of the reference was entitled under 35 U.S.C. § 119.

Because it held that a U. S. patent, cited as a prior art reference under 35 U.S.C. § 102(e) and § 103, is effective as of its foreign "convention" filing date, relying on 35 U.S.C. § 119, the board affirmed the rejection of claims 10, 16, and 17 of application serial No. 750,887, filed July 25, 1958, for certain sulfonyl ureas.

This opinion develops the issue, considers the precedents, and explains why, on the basis of legislative history, we hold that section 119 does not modify the express provision of section 102(e) that a reference patent is effective as of the date the application for it was "filed in the United States."

The two "references" relied on are:

Habicht 2,962,530 Nov. 29, 1960 (filed in the United States January 23, 1958, found to be entitled to priority as of the date of filing in Switzerland on January 24, 1957)

Wagner et al. 2,975,212 March 14, 1961 (filed in the United States May 1, 1957)

The rejection here is the aftermath of an interference (No. 90,218) between appellants and Habicht, a *priority* dispute in which Habicht was the winning party on a single count. He won because appellants conceded priority of the invention *of the count* to him. The earliest date asserted by appellants for *their* invention is their German filing date, July 31, 1957, which, we note, is a few months later than Habicht's priority date of January 24, 1957.

After termination of the interference and the return of this application to the examiner for further ex parte prosecution, the examiner rejected the appealed claims on Habicht, as a primary reference, in view of Wagner et al., as a secondary reference, holding the claimed

compounds to be "unpatentable over the primary reference in view of the secondary reference which renders them obvious to one of ordinary skill in the art."

Appellants appealed to the board contending, inter alia, that "The Habicht disclosure cannot be utilized as anticipatory art." They said, "The rejection has utilized * * * the discosure of the winning party as a basis for the rejection. The appellants insist that this is contrary to the patent statutes." Explaining this they said:

* * * the appellants' German application was filed subsequent to the Swiss filing date [of Habicht] *but prior to the U. S. filing date of the Habicht application.* The appellants now maintain that the Habicht disclosure *cannot* be utilized as anticipatory in view of 35 U.S.C. 119 which is entitled "Benefit of Earlier Filing Date in Foreign Countries: Right of Priority." This section defines the rights of foreign applicants and more specifically defines those rights with respect to dates to which they are entitled if this same privilege is awarded to citizens of the United States. There is no question [but] that Section 119 only deals with "right of priority." The section does not provide for the use of a U. S. patent as an anticipatory reference as of its foreign filing date. This interpretation of Section 119 is also set forth in the Manual of Patent Examining Procedure (Section 715.01). The Manual refers to Viviani v. Taylor v. Herzog, 72 USPQ 448, wherein Commissioner Coe clarified the question of priority rights with respect to foreign and domestic filing.

Appellants further pointed out that, "The interference only decided the priority of the interference issue [i. e. the count]; there was no decision made nor was there any attempt to decide who was the inventor of the disclosure. The appellants readily admit the priority of Habicht as to the interference issue, but there is no admission as far as the remaining subject matter is concerned."

The board, one member dissenting with an opinion, affirmed the rejection. In the majority opinion there are four statements of the issue. The first is:

As stated by appellants in their reply brief, the *main issue presented by this appeal is the availability of the Habicht patent as a reference.* This question was argued at length at the hearing and appellants were requested to file, and filed, a further legal memorandum concerning it. [Emphasis ours.]

The third statement (second to follow later) involves an expression of the board's view on the relevance of the interference to the issue and reads:

It is noted that the instant application was involved in an interference with Habicht (before the patent issued), with claim 1 of the patent as the count, and appellants conceded priority to Habicht. However, *no questions of estoppel or res judicata can be raised* concerning the [presently claimed] cyclohexyl substituted compound; Habicht did not disclose (or even suggest) any cyclohexyl or cycloalkyl compounds, no count to a cyclohexyl compound, or broad enough to include cycloalkyl compounds could have been added to the interference, nor could appellants have relied on such compounds to show priority. Appellants are free to attempt to secure claims to such compounds and to show that they *preceded* Habicht's date as to them, *the question being which date of Habicht is the controlling one.* [Emphasis ours.]

We deem this to be a clear statement that Habicht *did not claim and could not have claimed* the subject matter now claimed by appellants, that therefore there could have been no interference, or *priority* contest, with Habicht with respect thereto, that for this reason no estoppel or res judicata may be asserted against appellants as a result of the in-

terference, wherefore the question is the effective date of the Habicht patent.[1] The board's fourth statement of the issue reads:

> With respect to claims 10 and 16, *the issue* in this case is:

> When the claimed subject matter of a U. S. patent is used as a basis for rejecting a claim in an application and the reference patent is found to be entitled to the date of a prior foreign application under 35 USC 119, *is the date of the reference which must be overcome,* in order to remove it [as a reference], *its actual filing date in the United States or the priority date* to which the patent is entitled for that subject matter? [Emphasis ours.]

We note that there are two restrictions in this statement not present in any of the others. First, it refers only to *claimed* subject matter of the "reference" patent. That this was deliberate is shown by a footnote to the very end of the majority board opinion in which the majority said:

> 13. Whether the foreign filing date can be used for such matters as mere descriptions of prior art, disclosures of species not within the scope of any of the claims of the U. S. patent, etc., which may appear in the specification of the latter, is not decided since such matters are not involved herein.

As we see the facts here, however, the board relied on subject matter *not* claimed. We regard the restriction as without legal significance because: (1) Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651 (1926), discussed infra, creating the rule of 35 U.S.C. § 102(e), here relied on as basic support for the rejection, abolished the distinction between claimed and unclaimed disclosure; (2) within a few months of the decision herein the board

decided Ex parte Zemla, 142 USPQ 499 (1964), and Ex parte Rapala (unreported, Appeal No. 225–56, decided Sept. 18, 1964), discussed infra, in which this distinction is not mentioned, so that the board now seems to think, as do we, that, as a question of law, whether the disclosure is claimed is irrelevant.[2] Another reason why we shall disregard the limitation to claimed subject matter is that authority higher than the Patent Office, namely the District Court for the District of Columbia in Eli Lilly & Co. v. Brenner, 248 F.Supp. 402 (1965), discussed infra, has effectively removed this restriction in a parallel case as shown in the quotation we later make from its opinion. Lilly was Rapala, supra, in the Patent Office.

The second restriction in the board's fourth statement of the issue is that "the reference patent is found to be entitled to the date of a prior foreign application under 35 USC 119 * * *." To some degree this loads the question. There is in it an implicit assumption that *if* the patent *is* "entitled to the date of a prior foreign application," it is *entitled* to it, and that is that. But one must examine closely into what is meant by the word "entitled." In essence, that is the problem in this appeal and we wish to point to it at the outset to dispel any mistaken assumptions. A patent may be "entitled" to a foreign filing date for some purposes and not for others, just as a patent may be "used" in two ways. A patent owner uses his patent as a legal right to exclude others, granted to him under 35 U.S.C. § 154. Others, wholly unrelated to the patentee, use a patent, not as a legal right, but simply as evidence of prior invention or prior art, i. e., as a "reference." This is not an exercise of the patent right. This is how the Patent Office is "using" the Habicht patent. These are totally different

---

1. The board's opinion contains no clear recognition of another rejection by the examiner, different from the rejection above stated, based on *the issue of the interference* in view of Wagner et al. This opinion deals only with the issue the board chose to deal with. As to the other rejection, see the end of this opinion under "Reason for Remand."

2. See, however, footnote 1 and the section at the end of this opinion headed "Reason for Remand."

things, governed by different law, founded on different theories, and developed through different histories.

■ We have seen that 35 U.S.C. § 119 is involved with respect to the so-called "priority date" of the Habicht reference patent. The other statutory provision involved in this case, applicable to both of the references, is 35 U.S.C. § 102(e). Section 102 has been aptly described (Meyer article, infra) as containing "patent defeating provisions." They fall into two classes, events prior to an applicant's date of *invention* and events prior to filing his U. S. *application,* related respectively to the requirement of novelty and to provisions for loss of right through delay in filing after certain events have made the invention public. Subsection (e) is one of the novelty provisions, one of the "conditions for patentability," and if the facts of an applicant's case bring him within it, his right to a patent is defeated. This subsection together with the heading and introductory line of the section reads:

§ 102. *Conditions for patentability; novelty and loss of right to patent*

A person shall be entitled to a patent unless—

\* \* \* \* \* \*

(e) the invention was described in a patent granted on an application for patent by another filed *in the United States* before the invention thereof by the applicant for patent, \* \* \*. [Emphasis ours.]

Thus, though both references here were patents copending with appellants' application, issuing after it was filed, 102(e) makes them available as of their U. S. filing dates which are earlier than appellants' U. S. filing date. However, since 102(e) refers to the applicant's *date of invention,* not to his filing date, he is entitled to an opportunity to establish his date of invention to show that his invention possessed *statutory* novelty when he made it. In this case appellants did this by showing that they filed a German application earlier than the U. S. filing dates of the references, specified in 102

(e), and that they were entitled to its date for "priority" under section 119. This right is not in question. The board ruled:

Appellants have overcome the U. S. filing date of Habicht by claiming the benefit under 35 USC 119 of an application filed in Germany on July 31, 1957. The specification of this German application has been examined and is found to contain a full disclosure of the subject matter of the claims, and the U. S. filing date of Habicht is considered overcome.

We can now summarize the issue and simultaneously state the board's decision. Continuing the above quotation, the board said:

The Examiner insists, however, that the effective date of the Habicht patent is January 24, 1957, the date of an application filed in Switzerland which is claimed by Habicht under 35 USC 119. Appellants have not overcome this earlier date of Habicht. The issue is hence presented of whether the foreign priority date of a United States patent can be used as the effective filing date of the patent *when it is used as a reference.* [Emphasis ours, and this is the second statement of the issue by the board.]

\* \* \* \* \* \*

Our conclusion is that the priority date governs \* \* \*.

This is the decision alleged to be in error. We think it was error.

*Background of the Issue as to the Availability of Habicht as a Reference*

The issue in this case involves a question of statutory interpretation basic to the operation of the patent system. This issue has arisen because after decades of a uniform practice, and interpretation of law which has existed in part since 1903 and in whole since 1926, the Patent Office has made an abrupt about-face; having refused for at least 30 years, after expressly ruling on the question, to apply U. S. patents *as references* as of foreign "priority" dates, it has changed its

practice as made manifest in an unknown number of board decisions. One of them is here on appeal. Another, as will presently appear, has been reviewed under 35 U.S.C. § 145 in the District Court for the District of Columbia where the Patent Office was affirmed, Lilly v. Brenner, supra. A third has been published, Ex parte Zemla, 142 USPQ 499.

There has been a spate of writing on the question of law here involved, all of which we have read. The same ground has been plowed and replowed by authors as well as different panels of the Patent Office Board of Appeals. In chronological order, the following articles and opinions have appeared:

August 1963, "Effective Filing Dates of U. S. Patents Based on 35 U.S.C. Sec. 119," by Leon Chasan and Frederick H. Rabin, 45 JPOS 601–612, attacking the problem "as to which date—the actual U. S. filing date or the earlier convention date—shall be considered as that of filing under 35 U.S.C. § 102(e)." They conclude that "the answer to the question * * * is not free from doubt * * *." The closing sentence is: "It appears likely that the courts will have to rule expressly on this point, possibly in the near future, and it is also quite possible that the position taken by the Patent Office will be reversed." (Herein "Chasan-Rabin article.")

February 25, 1964, the *Hilmer* opinion below, then unpublished, majority opinion by Examiner-in-Chief Federico joined by Acting Examiner-in-Chief Rosdol, dissenting opinion by then Acting Examiner-in-Chief Behrens, holding that the convention date is the effective date of a U. S. patent as a reference with respect to "claimed subject matter" therein and "the disclosure in the specification relevant to the claimed invention."

March 1964, "An Analysis of the Combined Effect of 35 USC § 119 and 35 USC § 102(e)," by David S. Fishman of the Connecticut Bar, 46 JPOS 181–213, saying "this paper will attempt to demonstrate that such patents [claiming priority to a foreign filing date] should be accorded the foreign filing date for reference purposes * * *." In the context of the article this means as references to defeat claims to patents by all others and with respect to all matter disclosed whether or not claimed, and whether used to show complete anticipation or in support of a claim of obviousness 35 U.S.C. §§ 102, 103. (Herein "Fishman article.")

May 27, 1964, a Commissioner's Notice issued (published June 9, 1964, 803 O.G. 305) revoking a very long-standing section of the Manual of Patent Examining Procedure (MPEP), 715.01 "Reference Claims Foreign Filing Date," based on a Commissioner's decision of May 9, 1935, Viviani v. Taylor v. Herzog, 72 USPQ 448, and providing that an applicant need not antedate the foreign filing date of a reference. The Notice stated that "foreign filing date is considered the effective date in those situations where claimed subject matter of the domestic patent (or disclosed matter related thereto) is being used as the basis for rejection, and where no question of interference exists."

June 8, 1964, this *Hilmer* appeal filed in this court with transcript of record making the board's opinion a public record.

July 31, 1964, decision rendered by the Board of Appeals in Ex parte Zemla, supra, opinion by Examiner-in-Chief Kreek, joined by Examiner-in-Chief Friedman and Acting Examiner-in-Chief Andrews, holding that a U. S. patent "may be used for all that it discloses as of the date that the same disclosure was made in a foreign country under the Convention." No mention is made of restriction to claimed subject matter or of any interference situation. The basis of the decision is a verbatim copy of the key segment of the *Hilmer* board opinion, but the limitations of the *Hilmer* decision are omitted and *Hilmer* is, of course, not mentioned.

August 1964, "Re: 'Ex parte Blumlein'," by Robert J. Patterson, 46 JPOS 597, calls attention to the omission in the Fishman article of a decision of this court, In re Walker, 213 F.2d 332, 41 CCPA 913 (1954), affirming Ex parte

Blumlein, 103 USPQ 223 (1952), reconsideration denied, 103 USPQ 224 (1953), which Fishman had characterized as "completely untenable" and "logically unsound" (pp. 205, 206), and saying: "One cannot but wonder if the author of the article would have said anything differently had he realized that the CCPA affirmed the decision of the Board of Appeals."

August 1964, "Re: 'An Analysis of the Combined Effect of 35 USC Section 119 and 35 USC Section 102(e)'," by William E. Currie, 46 JPOS 598–599, expresses disagreement with the Fishman article and points to flaws in its reasoning. Currie points out that Fishman omits mention of the caption and the second paragraph of section 119, both of which refer to *priority*. Currie's view is that section 119, contrary to Fishman's view, thus *does* contain language restricting the meaning of the words "the same effect" so that they do *not* include effect as an "anticipation" but are limited to priority issues. Currie concludes:

Therefore, in view of this Section 102(e) should be read to mean just what it says, "filed in the United States." There is nothing in Section 119 to carry over to Section 102(e). Scope of the priority right is discussed in detail in "Foreign Priority Rights under Section 119 of the Patent Act of 1952," Briskin, 39 JPOS 94–121.

Statutory enactment was required to prevent an applicant from establishing anticipation by using his foreign reduction to practice, but in that case there was no basis for interpretation, as there is here. It would seem to be illogical, and adverse to the interests of United States inventors, to give a foreign patent application the status of a reduction to practice for purposes of anticipation.

The last quoted paragraph refers, of course, to 35 U.S.C. 104, which originated, as a statutory enactment, in section 9 of the Boykin Act, Aug. 8, 1946, 60 Stat. 943, both discussed infra.

September 18, 1964, decision rendered by the Board of Appeals in Ex parte Rapala (unpublished, Appeal No. 225–56, heard June 25, 1964), opinion by Examiner-in-Chief Federico joined by Examiner-in-Chief Rosa and Acting Examiner-in-Chief Stone. The opinion substantially duplicates the contents of *Hilmer*, contains the legal discussion used in *Zemla*, but like the latter does not limit the use of the disclosure of the U. S. patent held effective as of its British priority date to claimed subject matter or disclosure "relevant to" it. The following statement appears at the outset:

Appellant is aware of the fact that several recent decisions of the Board of Appeals have dealt with the question presented, but inasmuch as these decisions are not public they cannot be used as precedents and the question must be considered anew.

Therefore we find a repetition of most of the *Hilmer* opinion. As of now, of course, three board opinions are public. See Lilly v. Brenner, discussed infra.

November 1964, a Commentary, by Gary A. Samuels, 46 JPOS 827–828, critical of the Chasan and Fishman articles, the May 27 Notice, and the Board of Appeals decision, expressing the view that the extension of the effective date of U. S. patents used as references backward in time to their foreign filing dates is contrary to the intent of Congress, referring to items of legislative history.

June 1965, "Are Patents Effective References as of Foreign Filing Dates?," by Harold S. Meyer of the Ohio Bar (Mr. Meyer was a member of the Coordinating Committee which helped to write the 1952 Patent Act—see Rich, "Congressional Intent—Or, Who Wrote the Patent Act of 1952?," pp. 61–78, Patent Procurement and Exploitation, BNA, Washington, 1963), 47 JPOS 391–410. Referring to all of the foregoing items, Meyer says: "Those publications and decisions which favor the foreign application date as the effective date of a reference have left out of consideration some significant factors which lead to exactly the contrary conclusion." His article develops this thesis in detail and concludes as to "what the law was intend-

ed to be when it was enacted as the present statute, and what it therefore is" in these words: "The provisions of the International Convention and 35 USC 119 * * * establish only priority rights for the claimed subject matter, and do not change the effective dates of references under 35 USC 102(a), (b), and (e)." (Herein the "Meyer article.")

October 6, 1965, Manual of Patent Examining Procedure amended by inserting new section 715.01 corresponding in substance to the May 27, 1964 Notice and *Hilmer.*

November 1965, a Commentary, by L. Chasan (see August 1963, supra), 47 JPOS 922–924, on the Meyer article in which this co-author says his former position was that while the answer to the problem of statutory construction "was not free from doubt, on balance the case law and the authorities that have considered this have arrived at the conclusion that it is the *Convention* date which should control." He then tries to discredit *some* of Meyer's authorities, ignoring the mainstream of his argument and ends by saying:

> The matter is of sufficient interest that even the forthcoming CCPA hearings on, e. g., In re Hilmer, Korger, Weyer and Aumuller may not be conclusive. The issue will undoubtedly be raised in interparte [sic] matters of sufficient importance for possible ultimate resolution by the Supreme Court.

December 20, 1965, opinion of the District Court, District of Columbia, in Lilly v. Brenner, 248 F.Supp. 402–434. This was a suit under 35 U.S.C. § 145 to review the decision of the board in Ex parte Rapala, supra, and so far as we know is the last item to date in the general picture. The opinion adopted by the District Court supports the granting of a summary judgment requested by the Patent Office dismissing Lilly's complaint. On the question of law presented, namely, the effective date of a single U. S. patent cited as a reference to support a rejection under 35 U.S.C. § 103 for obviousness, the court agreed with the Patent Office that the effective date was the convention filing date in Great Britain, a date the applicant could not overcome. Had the reference been held effective only as of its actual date of filing in the United States, as plaintiff urged, the Patent Office motion for summary judgment would have been denied. We have most carefully studied this opinion as it is the most recent decision dealing with all of the arguments which have been brought to bear on this problem, contributing not a few new ones. We cannot agree with it.

To make clear what we disagree with, we quote the District Court's own summary statement of its position (248 F. Supp. at 408):

> The important question to be settled in this case is one of first impression in this court. The issue may be stated to be whether, in a situation where a *foreign inventor* has been granted a United States patent on a United States patent *application* which is entitled under 35 U.S.C. § 119 to the *benefit* of an earlier application filing date in a foreign country, this United States patent is available as a reference under 35 U.S.C. 102(e) for *all disclosed subject matter*, whether claimed or unclaimed, as of the filing date of the earlier foreign application. This court agrees with defendant [Patent Office] and holds that the foreign filing date is the effective *reference* date *as to all subject matter which is disclosed, whether claimed or not,* in the foreign application, to the extent that such disclosures are brought forward and included in both the United States application and the United States patent granted on this application, the latter, of course, being the basis for a 35 U.S.C. § 102(e) rejection. [Emphasis ours.]

We regret that we find ourselves in conflict with the District Court, especially with an erstwhile colleague, on a question of patent law, and correspondingly in disagreement with several members of the board, but we find ourselves in agreement with the Meyers article, with the Patterson, Currie, and Samuels com-

mentaria, and with the dissenting views of Examiner-in-Chief Behrens who found the history of sections 102 and 119 to give "scant comfort to the majority's interpretation." We find it indeed strange that it has suddenly become imperative to reinterpret a statute which was enacted in 1903, later construed in the light of a Supreme Court decision of 1926, and to invert a practice under which a generation of lawyers since the latter date has obtained for clients close to two million United States patents, counting for their validity on a construction of the statutory law not only followed but promulgated by the Patent Office. Furthermore, in 1952 this law, already a quarter of a century old in toto, was carried forward by Congressional action without change, insofar as it was already statutory, and insofar as it was case law it was codified without change, the particulars of which will be dealt with later. This change in long and continuous administrative practice has also been made without any advance notice, hearing, or stated basis in policy, economics, or international relations. While it may be that the world is shrinking and the very concept of "foreign" should be abolished for the good of mankind, this is not a constitution we are expounding but specific statutes enacted to accomplish specific purposes, the meaning of which should stay put, absent intervening Congressional modifications, for well-understood reasons.

Turning from the general to the specific, we will now consider our specific reasons for construing the applicable statutes as they have for so long been construed, contrary to the recent innovation of the Patent Office.

### OPINION

The District Court in *Lilly* opens its opinion by observing that the question before it was one of first impression in that court. Here it is otherwise. In 1954 this court decided In re Walker, 213 F.2d 332, 41 CCPA 913. The casual reader of the opinion alone might get the impression, as apparently the District Court did in *Lilly* (248 F.Supp. at 430),

that *Walker* did not involve the issue here. On careful examination, especially with the aid of the record and briefs, it will be seen to be otherwise. Since it is the one case in point in this court we shall examine *Walker* first, after which we shall approach the problem of statutory construction primarily in a chronological fashion.

*Walker* was an appeal from the board decision in Ex parte Blumlein, 103 USPQ 223 (1952), decided below prior to the effective date of the 1952 Patent Act but afterward in this court. The discrepancy in names is due to the death of Alan D. Blumlein, said to be a well known British TV inventor, and his U. S. application was filed by his executrix, Doreen Walker (formerly Doreen Blumlein). As here, Blumlein was given an invention date by reason of the priority statute (then R.S. 4887) as of the filing of his British application on June 5, 1942. Involved as a reference was a U. S. patent to Whiteley, the U. S. filing date of which, February 5, 1943, was after Blumlein's date but the British filing date of which was earlier, February 17, 1942. Blumlein was making the same contention in that case that appellants are making here, that as a *reference* the effective date of the Whiteley U. S. patent was its U. S. filing date. *The board of appeals agreed with that contention.* The board also expressly held that Whiteley's British priority date was of "no consequence," apart from the effect of the outcome of an interference between Blumlein and Whiteley.

In the *interference* with Blumlein, Whiteley was able to assert his priority date which enabled him to antedate Blumlein and win the interference on his claims 1 and 2. In subsequent ex parte prosecution the examiner's rejection which went to the board was restated in his Statement (now called an Answer) in these terms:

Whiteley is considered to be a valid reference for what it shows, since the decision in the above interference was adverse to applicant, and Whiteley

proved a foreign filing date prior to applicant's foreign filing date.

\* \* \* \* \* \*

\* \* \* Applicant has failed to show any special circumstances whereby the Whiteley patent is not a reference against his claims.

In essence applicant argues that Whiteley is not an effective reference for what it shows, but only for what it claims. The effect of such a holding would be to grant applicant the benefit of his British filing date, but to deny it to Whiteley who successfully contested common subject matter with applicant.

The board, while agreeing with appellant's view that Whiteley was a reference only as of its U. S. filing date, gave a somewhat equivocal opinion about the effect of the interference, saying:

\* \* \* we are of the opinion that in view of the adverse decision on priority, appealed claims 11 to 17 and 20 were properly rejected as unpatentable over the disclosure of Whiteley as exemplified by the issue of the interference. Accordingly, we sustain the rejection of these claims.

Two subsequent opinions on reconsideration did not satisfy appellant, or clarify for him the exact ground relied on and in appealing to this court three questions were presented: (1) Whether the appealed claims were patentably distinct from claims 1 and 2 of Whiteley; (2) *whether under 35 U.S.C. § 119 Blumlein had to overcome Whiteley's British priority date;* and (3) whether Blumlein was estopped by the interference from claiming the subject matter of his appealed claims. The court had to and did consider all three questions. This court's opinion expressly considers point "(2)" supra, as the argument "that 'By carrying his [Blumlein's] invention back of the *domestic* filing date of the application which matured into the Whiteley patent, the appellant *overcame that patent as a reference* for the integrating circuit which is disclosed but not claimed therein,' citing in support thereof the relevant provision of the code, 35 U.S.C. 119 \* \* \*." (Emphasis ours.) The court answered the argument by quoting a paragraph from the Patent Office Solicitor's brief in which he *conceded* appellant to be correct, that as to structure not claimed by Whiteley it would be "quite permissible" to allow a claim to a later applicant who showed he invented the claimed structure before the filing date of the *domestic* application of Whiteley. The court then placed its own interpretation on the quoted paragraph saying, "in other words, the solicitor frankly *concedes* that appellant's quoted argument on the point in issue *is 'absolutely correct,* on the facts stated', but the solicitor contends, and we think properly, that appellant's argument is too broad and *inapposite with respect to the case at bar."* (Emphasis ours.)

Having passed on that point, the court then proceeded, in effect, to pass on points "(1)" and "(3)", supra, and to hold that the claims were not patentably distinct from the claims lost by Blumlein in the interference and to say that was the true ground of the decision below, which it affirmed on that ground. We therefore have in this *Walker-Blumlein* case decisions by *both* the board and this court that as to non-interfering subject matter the foreign priority date of a U. S. reference patent is of "no consequence" and that only the United States filing date has to be overcome. The final decision adopted the first of three possible courses of action for the court as submitted in Walker's brief in the following words:

1. It may affirm the decision below on the ground that the appealed claims and the interference counts are for the same invention and that, therefore, they are *res judicata* as to the appellant.

But in the process of arriving at that course of action the court did pass on the law applicable where there is no res judi-

cata, as in the present case.[3] The court's views at that time were in complete accord with the legal expertise in the Patent Office.

We note that in *Lilly,* in discussing *Walker,* the court ignored all of the relevant matters discussed above and proceeded on the assumption it could not possibly have passed on a point on which it did pass. It also ignores the *Blumlein* decision in the Patent Office on the very issue here involved.

We further note that in the instant case the board's opinion finds "confusion" as to the ground on which this court in *Walker* sustained the rejection, which we think is clearly stated, and that the board errs in stating the contention of the solicitor and the court's supposed approval of it. The solicitor did not contend that all "subject matter recited in the [Whiteley] claims" was available as prior art as of the priority date. Far from it, he said in his brief, "The issue here in no way involves a foreign filing date of the patentee Whiteley. * * * The rejection here is not upon Whiteley's foreign filing date. The rejection is based upon the adverse award of priority * * *." *That* is what the court "indicated * * * was proper." We think the board erred further in reading the second opinion on reconsideration in *Blumlein* (which it refers to as "Walker") in saying that in that opinion "the foreign date was considered relevant with respect to the disclosed but unclaimed components of the combination claimed." We find nothing remotely resembling such a view. In a very short opinion in answer to several requests to clarify its position, what the board did was to reiterate its position that Blumlein's claims were to subject matter "not patentably distinct" from the *issue* of the interference which he lost. It said nothing at all about "unclaimed components of the com-

bination claimed," as stated by the board here.

On the other hand, appellants here rely on *Walker* and accurately state what happened in *Blumlein* and in *Walker,* contending it is precedent supporting their contention "that the domestic filing date of a patent obtained by a foreign applicant is the critical date to be considered when it is desired to use the patent for anticipation purposes," that is, as an ordinary prior art reference. We fully agree. For the same reasons, we disagree with the *Lilly* opinion (248 F.Supp. at 430) where it says: "the [Walker] case does not really support plaintiff's position."

The Patent Office Solicitor has nothing to say on *Walker* for the interesting reason that he did not really file a brief for the Patent Office position. In his brief he says:

> Inasmuch as the decision [opinion] of the Board of Appeals sets forth in full and exact detail the reasons why the priority date is considered the effective date of the Habicht patent under 35 USC 102(e), it is believed to be unnecessary and undesirable to repeat or to paraphrase the decision in this brief.

In other words, the opinion of the board is the brief in this case. That was the position the solicitor took at oral argument.

We turn now to a chronological review and to the other statutes and precedents relied on by the parties.

The board's conclusion is that the foreign priority date of a U. S. patent is its effective date as a reference. In identical language in its opinion in this case and in the *Zemla* and *Rapala (Lilly)* opinions, the board's statement is:

> Our conclusion is arrived at simply by considering sections 102(e) and the

---

3. We trust this explanation of what this court did in *Walker* is a sufficient answer to the curiosity expressed by the District Court in *Lilly* (248 F.Supp. 431) as to our "reaction" to the argument that we passed on a rejection not relied on

by the Board of Appeals. This court did pass on the question as it was presented to it. The confusion as to what the ground of rejection actually was required the court to do so.

first paragraph of section 119 of the statute together.

\* \* \* [Here the statutes are quoted]

Section 119 refers to two applications for the same invention stemming from the same inventor, one a first application filed in a foreign country and the other a later application filed in the United States. \* \* \* Section 119 provides that under the specified circumstances, and subject to the requirements of the second paragraph which are not in question here, the second application, filed in the United States, "shall have the same effect" as it would have if filed in the United States on the date on which the application was filed in the foreign country. This language is plain; it gives the application the status of an application filed in the United States on a particular date. Section 102(e) provides that a patent may not be obtained if the invention was described in a patent granted on an application for patent by another *filed in the United States* before the invention thereof by the applicant. This paragraph makes the filing date of a U. S. patent [note the omission of "in the United States"] the effective date as a reference. It refers to an application filed in the United States and since section 119 provides that the application shall have the same effect as if filed in this country on a particular date, *these two provisions must be read together* and the filing date of the foreign application becomes the effective date of the United States reference patent. [Emphasis ours.]

This is so plausible that one's impulse is to say "Q.E.D." [4] We find the reasoning at fault, however, and the interpretation untenable. To discuss it we must have section 119 before us, insofar as applicable:

§ 119. *Benefit of earlier filing date in foreign country; right of priority*

An application for patent for an invention filed in this country by any person who has, or whose legal representatives or assigns have, previously regularly filed an application for a patent for the same invention in a foreign country which affords similar privileges in the case of applications filed in the United States or to citizens of the United States, *shall have the same effect* as the same application would have if filed in this country on the date on which the application for patent for the same invention was first filed in such foreign country, if the application in this country is filed within twelve months from the earliest date on which such foreign application was filed; *but* no patent shall be granted on any application for patent for an invention which had been patented or described in a printed publication in any country *more than one year before the date of the actual filing* of the application in this country, or which had been in public use or on sale in this country more than one year prior to such filing.

No application for patent shall be entitled to *this right of priority* unless [here follows the requirement for filing certain papers in the Patent Office and claiming priority not in question here, as the board held] \* \* \*. [Emphasis ours.]

The board's construction is based on the idea that the language of the statute is plain, that it means what it says, and

4. This construction is reminiscent of the many misreadings of the former statutory definition of the patent right as "the exclusive right to make, use, and vend the invention or discovery," R.S. 4884, which was so often asserted to give the patentee some positive right to make or use or sell things embodying his patented invention. The Supreme Court put this idea to rest in Bloomer v. McQuewan, 55 U.S. 539, 549, 14 L.Ed. 532 (1852), but it did not die until the 1952 Act changed the statute to read "the right to exclude others from making, using, or selling the invention \* \* \*." 35 U.S.C. § 154. Even now its ghost seems to hover over the opinion in the *Lilly* case (248 F. Supp. at 411, 412).

that what it says is that the application filed abroad is to have the *same effect* as though it were filed here—*for all purposes*. We can reverse the statement to say that the actual U. S. application is to have the same effect as though it were filed in the U. S. on the day when the foreign application was filed, the whole thing being a question of effective date. We take it either way because it makes no difference here.

Before getting into history, we note first that there is in the very words of the statute a refutation of this literalism. It says "shall have the same effect" and it then says "but" for several situations it shall *not* have the same effect, namely, it does not enjoy the foreign date with respect to any of the patent-defeating provisions based on publication or patenting anywhere in the world or public use or being on sale in this country *more than one year before the date of actual filing in this country.*[5]

As to the other statute involved, we point out that the words of section 102(e), which the board "simply" reads together with section 119, also seem plain. Perhaps they mean precisely what *they* say in specifying, as an express patent-defeating provision, an application by another describing the invention but only as of the date it is "filed *in the United States.*"

The great logical flaw we see in the board's reasoning is in its premise (or is it an a priori conclusion?) that "these two provisions must be read together." Doing so, it says 119 in effect destroys the plain meaning of 102(e) but the board will not indulge the reverse construction in which the plain words of 102(e) limit the apparent meaning of 119. We see no reason for reading these two provisions together and the board has stated none. We believe, with the dissenting board member, that 119 and 102(e) deal with unrelated concepts and further that the historical origins of the

two sections show neither was intended to affect the other, wherefore they should not be read together in violation of the most basic rule of statutory construction, the "master rule," of carrying out the legislative intent. Additionally, we have a long and consistent administrative practice in applying an interpretation contrary to the new view of the board, confirmed by legislation ratification in 1952. We will consider these matters separately.

*Section 119*

We shall now take up the history and purpose of section 119. The board opinion devotes the equivalent of four pages in the printed record to a scholarly and detailed review of the history of section 119 with all of which we agree, except for the interwoven conclusions as to its meaning as it bears on the effective date of a U. S. patent *used as a reference.*

■■ The board shows that the predecessor statute (R.S. 4887), containing the words "shall have the same force and effect," was enacted March 3, 1903 (32 Stat. 1225). Theodore Roosevelt signed it into law. The bill was drafted and proposed by a Commission created by Act of Congress in 1898 (30 Stat. 431) to study the effect of the Convention of Paris for the Protection of Industrial Property of 20th March 1883, which was under revision at Brussels even as the Commission deliberated, the revision being adopted at Brussels on 14th December 1900. (It was last revised at Lisbon on 31st October 1958.) The Commission made a report November 27, 1900, printed in 1902, entitled "Report of the Commissioners Appointed to Revise the Laws Relating to Patents, Trademarks, and Trade Names, with Reference to Existing Conventions and Treaties," which is fairly descriptive of its purpose. The section entitled "The Revision of the Patent Law," which we have read, ex-

5. These patent-defeating one-year time-bars are also contained in 35 U.S.C. § 102(b) (formerly R.S. 4886) and have always been included in § 119 (formerly R.S. 4887) to assure that it would *not* have the "same effect" if giving effect to a priority date would avoid these time-bars.

tends from page 6 to page 39. It begins by saying (p. 6):

> We have found it desirable in considering the question of revision of the patent law to first consider what changes in the law are needed to give full force and effect to the treaty obligations which the United States has undertaken touching the *protection* of inventions made by the subjects or citizens of certain foreign countries. [Emphasis ours.]

Under the heading "Priority Under the Convention," it says (p. 12):

> The second provision of the Convention to be noticed, and one which may be of very great advantage to those of our citizens who desire to secure patents in foreign countries for their inventions, is that contained in article 4, and relates to the so called "delay of priority," or "period of priority."

It then explained that in most countries no valid patent can be obtained if *before the application is filed,* the invention has been described in a printed publication, either in the country of application or even, as in the case of France and six other countries, in *any* country; that the same was true as to public use of the invention; and that the convention gives applicants in member countries a period (then 7 months, soon extended to 12) in which they can file applications in other countries after the filing in their own country and obtain valid patents notwithstanding publication or use *in the interval* and before the filing of the foreign application. This, it explained, is the "delay of priority." In plain English, it was the right of an applicant to have the foreign application treated at law as *prior* to the *intervening* publication or public use, though in fact it was not, by giving a right to that applicant to *delay* filing in the foreign country, instead of filing simultaneously with the home application, yet have it treated as though filed on the date of the home application. This is what today we call simply "Convention priority," or just "priority." The foreign filing date is the "convention date" or the "priority date."

This priority right was a protection to one who was trying to *obtain* patents in foreign countries, the protection being against patent-defeating provisions of national laws based on events intervening between the time of filing at home and filing abroad. Under the heading "Recapitulation of Advantages Secured by the Convention," the Commission said, so far as relevant here (pp. 14–15):

> The advantages to our citizens in the matter of patents directly afforded by the convention may be thus recapitulated.
>
> First. The enjoyment in foreign countries of equal rights with subjects or citizens of those countries.
>
> Second. The "delay of priority" of seven months within which to file applications abroad after filing in this country.
>
> Third. The privilege of introducing articles embodying the invention manufactured in this country into foreign countries to a certain extent without thereby causing the forfeiture of the patents taken out there.

Note the emphasis repeatedly placed in the Commission Report on advantages to United States citizens. It was felt we should do what was necessary to comply with the reciprocity provisions to enjoy the benefits of the convention for our own citizens. It was also believed that by reason of Opinions of Attorneys General, Vol. 19, 273, "the International Convention, in so far as the agreements therein contained are not in accordance with the present laws of the United States, is without force and effect; that it is not self-executing, but requires legislation to render it effective * * * and * * * it is our opinion that such legislation should be adopted * * *." (Report p. 19.)

Specific to the question here, the Commission Report says (p. 24):

> We are, therefore, of the opinion that an amendment to the law should be made, providing that the foreign ap-

plication shall have, in case an application is filed in this country by the applicant abroad within the specified period, the same effect as if filed here on the day it was filed abroad.

The board thinks this "shows the intention of the Commissioners" to create "a *status* of [an application] having been filed in the U. S. *for all purposes * *.*" (Emphasis ours.) In the context of this case, that means for the purpose of using a U. S. patent, obtained with a claim of priority, as a prior art patent to defeat the right of a third party to a patent on subject matter which does not patentably distinguish from anything that happens to be disclosed in such patent—or at least from anything disclosed "relevant to the [there] claimed invention," depending on which recent board opinion one looks at. We have read every word of the Commission Report looking for any suggestion of such a concept and have found none. All the board found was the above quotation. We deem it wholly inadequate as a basis for finding an intent to create a "status" for an application—to say nothing of the patent granted thereon—"for all purposes." There are other factors to consider which negative any such legislative intent.

There is another sentence in the Commission Report we should consider on page 26. It called attention to the fact that in most foreign countries the patent is granted to the first to apply and said:

The Convention has created an exception to the rule and made an application in any State of the Union for the Protection of Industrial Property of *the same effect as* an application in the country where an application is subsequently made within the time specified *as a period of priority.* [Emphasis ours.]

This couples very nicely with the wording of the first recommendation for a

change in U. S. laws on page 27 where it was said:

First. The application for a patent filed within seven [2] months of the filing of an application for a patent for the same invention in any foreign country which is a party to the International Convention should be given the *same force as regards the question of priority* that it would have if filed on the date on which the foreign application was filed. (Fn. 2: Extended to twelve months.) [Emphasis ours.]

The Commission, page 36, recommended proposed legislation, which is, in substance, the amendment to R.S. 4887 which was passed and is, with no change in substance, what we have today in section 119. The proposed bill in the Commission Report was entitled "A BILL to give effect to treaty stipulations relating to letters patent for inventions." The Act passed was entitled "An Act To effectuate the provisions of the additional act of the international convention for the protection of industrial property." Throughout, the same phrase has always appeared, "shall have the same force and effect," until it was simplified in the 1952 codification to "shall have the same effect." This change was mere modernization in legislative drafting. The Revisers Note to the section says: "The first paragraph is the same as the present law with changes in language." The Federico Commentary on the 1952 Act, 35 U.S.C.A., says (p. 29):

This so-called right of priority was provided for in the second paragraph of R.S. 4887 which is the basis for the first paragraph of section 119 of this title. * * * [he here states the 4 conditions for obtaining the right] * * * The new statute made no changes in these conditions of the corresponding part of the old statute except to revise the language slightly * * *.[6]

---

6. In the two and a half page analysis of section 119, referred to always as giving a "right of priority," there is no hint that the foreign filing date has anything to do with the effective date of a U. S. pat-

ent as a prior art reference. The Commentary was published in 1954. Thus, the present interpretation by Mr. Federico, speaking as an Examiner-in-Chief, represents a later development.

We need not guess what Congress has since believed to be the meaning of the disputed words in section 119, for it has spoken clearly. World wars interfere with normal commerce in industrial property. The one-year period of priority being too short for people in "enemy" countries, we had after World War I a Nolan Act (41 Stat. 1313, Mar. 3, 1921) and after World War II a Boykin Act. Foreign countries had reciprocal acts. One purpose was to extend the period of priority. House Report No. 1498, January 28, 1946, by Mr. Boykin, accompanied H.R. 5223 which became Public Law 690 of the 79th Cong., 2d Sess., Aug. 8, 1946, 60 Stat. 940. Section 1 of the bill, the report says, was to extend "the so-called period of priority," which then existed under R.S. 4887. On p. 3 the report says:

> In this connection, it may be observed that the portion of the statute which provides that the filing of a foreign application—
> shall have the same force and effect as the same application would have if filed in this country on the date on which the application for patent for the same invention, discovery, or design was first filed in such foreign country—
> is intended to mean "shall have the same force and effect," etc., insofar as applicant's right to a patent is concerned. This statutory provision has no bearing upon the right of another party to a patent except in the case of an interference where the two parties are claiming the same patentable invention. U.S.Code Congressional Service 1946, p. 1493.

We emphasize none of those words because we wish to emphasize them all. We cannot readily imagine a clearer, more definitive statement as to the legislature's own view of the words "same effect," which now appear in section 119. This statement flatly contradicts the board's view. The board does not mention it.

In *Lilly* the District Court (248 F. Supp. at 423–424) attempts to depreciate the above quotation to the vanishing point by saying it is nothing but reiteration of an erroneous Commissioner's decision (*Viviani*, supra) was not directly concerned with the Boykin Act, probably was not thoughtfully considered by the whole House or even the full committee, and is not a report on section 119, which was not enacted until six years later. If this need be answered, the answer is that the quotation happens to be a precise statement of the construction consistently placed on the statute by the Patent Office until 1963;[7] that the Boykin Act was concerned, as its first order of business in section 1, with extending the right of priority; and finally (omitting comment on the reading habits of Congressmen), section 119 is the very same law as R.S. 4887, the statute about which the report was speaking and, in effect, amending. Presumably Mr. Boykin wished to make it clear to Congress and the public that if his bill passed, it would *not* be pushing the effective date

7. To show that this was still the established construction in 1959 we cite McCrady, Patent Office Practice, 4th Ed. (1959), Sec. 142, "Effective Date of Domestic Patent," at p. 198:

> Where the reference patent claims benefit of an earlier foreign filing date, it would seem that the validity of such claim cannot be precluded against an applicant except in an inter partes proceeding. Despite the language of 35 USC § 119, that the U. S. application "shall have the same effect as the same application would have if filed in this country on the [foreign filing] date," the Office does not ordinarily use the foreign filing date in rejections [56], although where the patentee has won an interference with applicant on the strength of his foreign filing date such date becomes the effective date of the patent as to claims similar to the interference counts.[57]

> 56. Viviani v. Taylor (Comr: 1935) 72 PQ 448, MPEP 715.01.
> 57. Ex parte Kinsella (BA: 1938) 39 PQ 199. Ex parte Blumlein (BA: 1952 & 1953) 103 PQ 223.

To the same effect was the Patent Office's own MPEP, section 715.01 as it was over a long period until changed on May 27, 1964, quoted infra.

of references back by several years into the fund of unknown applications reposing in foreign patent offices, waiting to have Boykin act counterparts filed in the U. S., which could have had a most serious effect on the validity of U. S. patents issued in the war and post-war period, as well as on applications then pending.[8] R.S. 4887, the predecessor of section 119, is annexed to the report.

Another reason for giving great weight to the Committee Report's comments on what R.S. 4887 meant is that the same bill contained a section 9, the predecessor of present 35 U.S.C. § 104, discussed later, dealing expressly with acts of invention in foreign countries and overruling the effect of the Supreme Court decision in Electric Storage Battery Co. v. Shimadzu, 307 U.S. 5, 613, 616, 59 S.Ct. 675, 83 L.Ed. 1071 (1939), all of which has a bearing on the problem before us. That section prohibits proof of *acts* abroad to establish a date of invention, except as section 119 may have been complied with as to an application filed abroad.

■ For the foregoing reasons, we are clearly of the opinion that section 119 is not to be read as anything more than it was originally intended to be by its drafters, the Commission appointed under the 1898 Act of Congress, namely, a revision of our statutes to provide for a right of priority in conformity with the International Convention, for the benefit of United States citizens, by creating the necessary reciprocity with foreign members of the then Paris Union.

■ The board has mentioned that it was not limited in its terms to that treaty, which is true, so that it also functions relative to other treaties and reciprocal laws. We are unable to deduce from this any intent to affect the date as of which U. S. reference patents are effective. Nor can we do so by reason of another "deviation" from the Convention the board finds in section 4887 (now 119) as to the protection of third parties.

### Section 102(e)

We have quoted this section above and pointed out that it is a patent-defeating section, by contrast with section 119 which gives affirmative "priority" rights *to applicants* notwithstanding it is drafted in terms of "An application." The priority right is to *save* the applicant (or his application if one prefers to say it that way) *from patent-defeating provisions* such as 102(e); and of course it has the same effect in guarding the validity of the patent when issued.

Section 102(e), on the other hand, is one of the provisions which defeats applicants and invalidates patents and is closely related in fact and in history to the requirement of section 102(a) which prohibits a patent if

(a) the invention was *known* or used by others *in this country,* or patented or described in a printed publication in this or a foreign country, *before the invention* thereof by the applicant for patent, * * *. [Emphasis ours.]

In fact, section 102(e) springs straight from 102(a)'s predecessor, R.S. 4886, by decision of the United States Supreme Court in 1926. It was pure case law until 1952 when, having become firmly established, that law was codified by incorporating it in the statute.

We will not undertake to trace the ancestry of 102(e) back of its immediate parentage but clearly it had ancestors or it would never have come to the Supreme Court. We will regard its actual birth as the case of Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651 (March 8, 1926), which we shall call *Milburn*. It is often called the *Davis-Bournonville* case. It was an infringement suit on a patent to Whitford and the defense, under R.S. 4920, was that he was not the first in-

8. We know section 1 of the Boykin Act has a saving clause about "conflicting" rights of applicants and patentees but under the law then existing believe it refers to interference situations, possibly, and note that it refers specifically to infringement situations. In 1946 U. S. patents were not used as "references" as of their foreign priority dates and "conflicting" would not have connoted such situations.

ventor. R.S. 4920, "Fourth" defense, was: "That he was not the original and first inventor or discoverer of any material and substantial part of the thing patented." This was based on that part of R.S. 4886 corresponding to present 102(a), which read, "not known or used by others *in this country,* before his invention or discovery thereof." (Emphasis ours.) Defendant produced a patent to Clifford which contained a full description of Whitford's invention, but did not claim it. The law at that time was in confusion as to whether claiming was relevant to the defense and that was the issue the Supreme Court resolved. The Circuit Courts were in conflict, especially the Second and Sixth. No foreign applications were involved. The U. S. filing date of the application for Clifford's patent was earlier than any date relied on by Whitford. In a short three and a half page opinion Mr. Justice Holmes held that the description of Whitford's invention in Clifford's patent, Clifford's application having been filed in the United States Patent Office with the same description before Whitford's invention, showed that Whitford was not the first inventor, as the law required, and that his patent was therefore invalid.

We need not go into the reasoning of the *Milburn* case, which has its weaknesses, because all that matters is the rule of law it established: That a complete description of an invention in *a U. S.* patent application, filed before the date of invention of another, if it matures into a patent, may be used to show that that other was not the first inventor. This was a patent-defeating, judge-made rule and now is section 102(e). The rule has been expanded somewhat subsequent to 1926 so that the reference patent may be used as of its U. S. filing date as a general prior art reference, as shown by In re Harry, 333 F.2d 920, 51 CCPA 1541 (1964), and the December 8, 1965 Supreme Court decision in Hazeltine Research, Inc. v. Brenner, 382 U.S. 252, 86 S.Ct. 335, 15 L.Ed.2d 304.

What has always been pointed out in attacks on the *Milburn* rule, or in attempts to limit it, is that it uses, as prior knowledge, information which was secret at the time *as of which* it is used—the contents of U. S. patent applications which are preserved in secrecy, generally speaking, 35 U.S.C. § 122. This is true, and we think there is some validity to the argument that that which is secret should be in a different category from knowledge which is public. Nevertheless we have the rule. However, we are not disposed to extend that rule, which applies to the date of filing applications *in the United States,* the actual filing date when the disclosure is on deposit in the U. S. Patent Office and on its way, in due course, to publication in an issued patent.

The board's new view, as expressed in this case and in the *Zemla* and *Rapala* decisions, the latter sustained in *Lilly,* has the practical potential effect of pushing back the date of the unpublished, secret disclosures, which ultimately have effect as prior art references in the form of U. S. patents, by the full one-year priority period of section 119. We think the *Milburn* rule, as codified in section 102 (e), goes far enough in that direction. We see no valid reason to go further, certainly no compelling reason.

We have seen that section 119 originated in 1903 and that its purpose was to grant protective priority rights so that the United States might be a participating member in the International Convention by giving reciprocal priority rights to foreign applicants with respect to the *obtaining* of patents. We have also seen that section 102(e) was the codification of a court-developed *patent-defeating* rule based on a statutory requirement that an applicant's invention must not have been previously known by others *in this country.* We see no such relation between these two rules of law as requires them to be read together and it is our view that section 119 should not be so read with 102(e) as to modify the express limitation of the latter to applications "filed in the United States."

## Section 104

■ This brings us to another related section of the statute. We noted above that section 102(a) refers to knowledge of an invention *in this country* as a patent-defeating provision. This had been interpreted, long before the 1952 codification, to mean public knowledge. Federico's Commentary, 35 U.S.C.A. p. 18 says:

> In the language of paragraph (a), an invention is not new if it "was known or used by others *in this country*, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent." The Committee Report both in the general part and in the Revision Notes recognizes that the interpretation of this condition is somewhat more restricted than the actual language, stating "the interpretation by the courts *excludes* various kinds of private knowledge not known to the public," and the narrowing interpretations are not changed. The first clause of paragraph (a) indicates that *prior knowledge or use in a foreign country will not defeat the right to a patent;* a separate section, R.S. 4923 [section 72 of former Title 35], in the old statute *duplicated this provision and this old section has been omitted as its provisions are covered here and elsewhere.* [Emphasis ours.]

The "elsewhere" is section 104 which has also superseded section 9 of the 1946 Boykin act, above discussed. Before quoting it, we will mention another patent-defeating provision, 102(g) which says a patent may not be obtained on an invention if "before the applicant's invention thereof the invention was made *in this country* by another who had not abandoned, suppressed, or concealed it." (Emphasis ours.) The first sentence of section 104 reads:

§ 104. *Inventions made abroad*

In proceedings in the Patent Office and in the courts, an applicant for a patent, or a patentee, may not establish a date of invention by reference to knowledge or use thereof, or other activity with respect thereto, in a foreign country, except as provided in section 119 of this title.

The second sentence is an exception not relevant here.

■ It seems clear to us that the prohibitions of 104, the limitations in sections 102(a) and 102(g) to "in this country," and the specifying in 102(e) of an application filed "in the United States" clearly demonstrates a policy in our patent statutes to the effect that knowledge and acts in a foreign country are not to defeat the rights of applicants for patents, except as applicants may become involved in *priority* disputes. We think it follows that section 119 must be interpreted as giving only a positive right or benefit to an applicant who has first filed abroad [9] to *protect him* against possible intervening patent-defeating events in *obtaining* a patent. Heretofore it has always been so interpreted with the minor exceptions, of little value as precedents, hereinafter discussed. So construed, it has no effect on the effective date of a U. S. patent as a reference under section 102(e).

As further indication that the *Milburn* rule never applied to foreign filing dates, and that its statutory version, section 102 (e), does not either, is the fact that the Supreme Court dealt with the matter. The lower court had attempted to draw an analogy involving R.S. 4887 on the issue whether the anticipatory subject matter had to be claimed. Mr. Justice Holmes said, "The policy of the statute as to foreign inventions obviously stands on its own footing and cannot be applied to domestic affairs." (270 U.S. at 402, 46 S.Ct. at 325.) This shows he was at least conscious of the fact that he was

9. It is first filing in a foreign convention country that creates the priority right, *not the nationality of the applicant.* It often happens that American inventors domiciled in the United States file abroad before filing here and claim priority rights in their own country as a result.

dealing only with "domestic affairs." In discussing this point, the *Lilly* opinion (248 F.Supp. at 413) emphasizes that it is dealing with a 102(e) rejection, involving disclosure which is in a U. S. patent, a rejection "not based on 102(a)." This rather overlooks the fact that *Milburn* rested on the proposition that Whitford was not the first inventor, that there was no 102(e) in those days, and that the court found the basis for its decision in the R.S. 4886 provision that the invention must not have been "known * * * by others in this country, before his invention * * *." Today this provision is 102(a).

▬▬▬ The simple observable fact, therefore, is that the effect of section 102(e) is to make a U. S. patent *available* as a reference, as of its U. S. filing date, and that thereafter the rejection of an application, or the holding of invalidity in the case of a patent, is *predicated on* some other section of the statute containing a patent-defeating provision to which the reference applies. Much confused thinking could be avoided by realizing that rejections are *based* on statutory provisions, not on references, and that the references merely supply the *evidence* of lack of novelty, obviousness, loss of right or whatever may be the ground of rejection. In some cases we have examined on this issue, *Walker-Blumlein* for example, the *statutory ground* of rejection was that the applicant was not the first inventor, the *evidence* of that fact being that he lost a count to the same invention, or one patentably indistinguishable from it, in an interference. Yet the "reference relied on" in *Walker-Blumlein* was the patent granted to Whiteley after the interference, which *patent* had no relevance *as such*. There were similar aspects to the present case prior to the board's decision.

### Section 120

At oral argument the Patent Office Solicitor argued by "analogy" from 35 U.S.C. § 120 (a section which he said gives one U. S. application the benefit of an earlier *U. S.* application under spec-

ified circumstances *for all purposes*) that section 119 should similarly give to a patent, used as a reference under section 102(e), effect as of an earlier *foreign* filing date.

▬▬▬ We could ignore the issue because it was not before the board here and was not briefed but will consider it because it is extensively discussed in *Lilly* (248 F.Supp. at 408, 416, 425) wherein the Patent Office pursued the same argument. One aspect of it is that sections 119 and 120 contain the "same phrase," namely "shall have the same effect."

We find no substance in this argument because: (1) as above pointed out, our statute law makes a clear distinction between acts abroad and acts here except for patents and printed publications. Section 120, following policy in sections 102(a), (e) and (g) and 104, contains the limitation to applications "filed in the United States," excluding foreign applications from its scope. (2) Use of the same expression is mere happenstance and no reason to transfer the meaning and effect of section 120 as to U. S. filing dates to section 119 with respect to foreign filing dates. Section 120 was not drafted until 49 years after the predecessor of section 119 was in the statute.

### The Cases

With minor exceptions, we deem the few decided cases, which the writers on this issue all discuss, to be of slight significance. What determines the result in this case is statutory history, not judicial precedents. We will therefore treat them as briefly as possible in chronological order. *Milburn* (1926), of course, is part of the statutory history and does not deal with the issue here at all.

Next came Federal Yeast Corp. v. Fleischmann Co., 13 F.2d 570 (4th Cir. 1926), affirming 8 F.2d 186 (D.Md.1925). This was an infringement suit on two patents the validity of which was attacked. The court determined that they were for the same invention and they were both owned by Fleischmann. They could

not both be valid. One of them had a 1915 German filing date, effective under the World War I Nolan Act, and a U. S. filing date in 1920. The other had a filing date in 1919. The patent on the former application was sustained and the patent on the latter application held invalid. There is much dispute as to what the case stands for. If the inventions were the same, as they appear to have been, a priority-type situation existed in which the date of priority and foreign filing would be involved. There was no interference, but in holding valid the patent with the German filing date the court gave the patent the benefit of the "priority" date. It also relied on *Milburn*, then just decided, subsequent to the District Court decision. The lower court found the patent with the German filing date to be the "prior application" by virtue of the Nolan Act, without discussion, said the respective filing dates fixed the dates of invention, found the second invention was the equivalent of the first, and under the authorities found there was "no patentable invention" in the second, wherefore it was invalid. The appellate court affirmed, saying validity was "to be governed by the ordinary rules" and finding, as to the second patent, "in view of the disclosures of Hayduck [the first], their claims in suit cover nothing patentable." It also found the two inventions were the same and remarked that "the plaintiff can get all the relief against the defendant [from the claims of the one patent] it could obtain, if both patents were held valid and infringed." While we are not sure what the case stands for, other than the proposition that there cannot be two valid patents on the same invention, we are sure there was no discussion of the problem before us now. We are willing to say on its facts it is some support for the board but it seems to us more like a priority case or a double patenting issue than a decision on the effective date of a U. S. patent as a reference. In fact, the appellate court talked about "priority." On the issue here it is a very unclear precedent, as most commentators seem to agree.

Nine years pass without a decision and we then come to Viviani v. Taylor v. Herzog, 72 USPQ 448 (1935), a Patent Office decision which deals squarely with the issue here, is admitted by the board in *Rapala* (*Lilly*) to be "of course contrary to the holding herein" whereas in this case the board attempts to distinguish it on the ground there is a difference between matter claimed in a reference and matter not claimed. We quote what the Commissioner said to show the basis of the Patent Office practice for some 30 years.

Section 4887 R.S. [119] does not concern itself with bars against the issuance of patents in this country, such bars being found in section 4886 R.S. [102] (U.S.C., title 35, sec. 31 [old 35]).

Section 4887 R.S. relates solely to the rights of an applicant in the United States who has filed an antecedent and corresponding application in a foreign country.

\* \* \* \* \* \*

In view of the origin of that [second] paragraph of the section [4887], it is believed to have the same meaning as if it had read, "shall have the same force and effect, in so far as applicant's right to a patent is concerned." This statutory provision has no bearing upon the right of another party to a patent except in the case of an interference where the two parties are claiming the same invention.

\* \* \* \* \* \*

Section 4887 R.S. cannot be construed as giving greater effect [to a foreign application, which at most is evidence of knowledge of the invention abroad] than is accorded by section 4923 R.S. to knowledge or use in foreign countries which is actually proven. [The last pair of brackets, inexplicably, appears in the original.]

The Commissioner considered the *Fleischmann* case, explaining at length why he found the basis of the decision unclear, noting that R.S. 4923 had not been mentioned. That old section, somewhat like 35 U.S.C. § 104, ruled out knowledge or

use in a foreign country as a ground for invalidating a patent. See Electric Storage Battery Co. v. Shimadzu, 307 U.S. 5, 613, 616, 59 S.Ct. 675, 83 L.Ed. 1071 (1939).

Under *Viviani* the Patent Office promulgated section 715.01 of its Manual of Patent Examining Procedure under which it and the bar operated until recently. It read:

> In overcoming, under Rule 131, a *domestic patent* where the patentee has an earlier foreign filing date to which *he* would be entitled in establishing *priority* to the invention claimed in the patent, it is *not* necessary for the *applicant* to carry his date back of the patentee's foreign filing date. (Viviani v. Taylor v. Herzog, 72 U.S. P.Q. 448). [Emphasis ours.]

In 1941 the Court of Appeals for the Second Circuit decided Celanese Corp. of America v. Ribbon Narrow Fabrics Co., 2 Cir., 117 F.2d 481, affirming 33 F. Supp. 137 (S.D.N.Y.1940). Suit was on a Dreyfus patent and a reference was a U. S. patent to Sponholz with a U. S. filing date after, and an alleged German filing date before, Dreyfus' date of invention. The wording of both opinions is inept and all writers are confused by it but whatever the statements made and reasons given, it is clear that defendant asserted the German filing date for the reference and the District Court refused it, the Court of Appeals saying "Sponholz had previously applied for a German patent on May 11, 1926 but that is immaterial * * *." It may be a precedent of little value but it is certainly on the side of disallowing the foreign filing date as the effective date of a reference patent.

In 1951 Young et al. v. General Electric Co., D.C., 96 F.Supp. 109, was decided by an Illinois District Court. It involved validity of a patent in suit and the only pertinent remark is concerned with a Bethenod reference having a U. S. filing date after and a French filing date earlier than the date of invention of the patent in suit. Many other prior art patents were relied on. In footnote 6, page 136 of 96 F.Supp., Judge Barnes said, speaking of Bethenod,

> * * * whether it is prior art as to Young No. 2,179,569 depends on the date to which the Bethenod Patent is entitled * * *. The court is of the opinion that it is entitled to the earlier date * * * but there is a difference of opinion on this question among the authorities. [Fleischmann and Celanese, supra, cited.] Whether Bethenod be regarded as prior art in this case makes little or no difference. There is a wealth of prior art without it.

This is some support for the board's view, but not much.

Most writers do not bother with the 1952 opinions of the Second Circuit Court of Appeals in Van der Horst Corp. v. Chromium Corp. of America, 197 F.2d 791; 198 F.2d 748. The court made the mistake of using, "Under the doctrine of Alexander Milburn," the British filing date of a *British* patent cited as prior art. On rehearing, the court, in effect, withdrew that ruling saying, "It is not necessary to decide the point and we leave it open * * *." The stated reason for withdrawal was:

> We failed to take into consideration § 72 of Title 35, U.S.C.A. which provided that it should not "void" a patent that "the invention or discovery" had been previously "known or used in a foreign country, * * * if it had not been patented or described in a printed publication." It is reasonable to assume that Holmes, J., had § 72 in mind in Alexander Milburn Co. v. Davis-Bournonville Co., supra, 270 U.S. at page 402, 46 S.Ct. 324, 325 when he said that "The policy of the statute as to foreign inventions obviously stands on its own footing and cannot be applied to domestic affairs."

The statute referred to as § 72 is R.S. 4923. Cf. 35 U.S.C. § 104.

Ellis-Foster Co. v. Reichhold Chemicals, Inc., 198 F.2d 42 (3rd Cir. 1952), is cited in the Fishman article as significant because, in his opinion, it criticizes *Viviani*, which we do not find to be the case. The

board herein in a footnote says that the patentee in *Ellis-Foster* failed to antedate the actual U. S. filing date of the reference patent, wherefore the issue here was not present. We agree.

The last case was in 1960 and at argument the solicitor indicated that it may have been what triggered the reconsideration of the law by the Patent Office and its subsequent change of position. It is Sperry-Rand Corp. v. Knapp-Monarch, Co., 193 F.Supp. 756 (E.D.Pa.1961). The examiner here relied on it. The board seems to give it great weight here and in *Rapala (Lilly)*, finding in it the key phrase which is now its guiding principle —that section 119 gives "status to an application." The District Judge [10] had a problem with a Wimberger patent cited as prior art, whether it was effective as of its Austrian filing date or only as of its U. S. filing date. He called for authority on the point and counsel for both sides supplied it in letters, with arguments, copies of which we have. Counsel for Sperry-Rand presented the "status" argument, which is its origin, so far as we have seen, based on the "same effect" words in section 119. The only cases he cited as authority for his view were *Young, Ellis-Foster,* and *Van der Horst*, all discussed above. The court decided, in a footnote, that section 119 gives "status to an application, as distinguished from mere benefit to an applicant, based on the foreign filing. This status is not limited in its effects to the particular applicant involved. Consequently, the Wimberger patent must be considered." His footnote mentions none of his reasons for so deciding, other than the words of section 119, cites no cases, and does not discuss the matter further. *Viviani* was called to his attention as well as MPEP 715.01.

With regret and for the reasons we have fully explained, we must simply express disagreement with the decision of the single judge in *Sperry-Rand*. Like the view of the board, we view his construction of the words of the statute as too literal and in disregard of the history of the law which was not called to his attention. As to its lack of compelling force as a precedent, we quote from the board herein:

There was a rehearing in which the Court held that it was incumbent on the patentee to produce strong and convincing evidence of any prior date asserted, regardless of the Patent Office acceptance of an affidavit antedating references, 129 USPQ 305, 193 F.Supp. 756 (1961). There was no evidence in court, and hence the patentee had not overcome the filing dates of the other references involved, not even the U. S. filing date of the Wimberger patent. *The issue involved here hence became moot and the statements of the Court regarding it are dicta,* although this does not mean that they are incorrect. [Emphasis ours.]

*Summary as to the Law and Its Legislative Ratification*

We have now set forth extracts and digests of the materials produced by legal research to indicate what we believe the "law" to be. This, of course, is no substitute for the much more voluminous original materials. From it the following clear picture emerges.

Section 102(e) was a codification of the *Milburn* doctrine. The *Milburn* case accorded a U. S. patent effect as a reference as of its U. S. filing date and stated that the policy of the statute on domestic inventions "cannot be applied to foreign affairs." No foreign date was involved in the case. The codifying statute specifies that the date as of which the patent has effect is the date of filing *"in the United States."*

R.S. 4887, predecessor of section 119, was in effect from 1903 to 1952 when it was incorporated unchanged in the present statutes. An examination of the legislative history of that statute fails to reveal a scintilla of evidence that it

10. Senior Judge William H. Kirkpatrick, United States District Court for the Eastern District of Pennsylvania, who often sits with this court and is so sitting now, but who did not sit in this case.

was ever intended to give "status" to an application or to serve as a patent-defeating provision except insofar as the application, or patent issuing thereon, becomes involved in a priority contest. The *Milburn* rule, under which U. S. patents are used as prior art references for all matter disclosed in them as of their U. S. filing dates has been consistently and continuously applied since its inception in 1926, if not earlier under lower court decisions, by the United States Patent Office, the agency charged with the administration of the patent system, in accordance with the view expressed by the Commissioner of Patents in 1935 in the *Viviani* case. That view was that R.S. 4887, and later section 119, does not make a U. S. patent effective as a reference as of a foreign priority date to which it may be entitled. This view was further actively promulgated by the Patent Office in the *first edition* of its Manual of Patent Examining Procedure, Section 715.01, November, 1949, and so continued until May 27, 1964, after the expression by the board of its new view as exemplified in this case.

There is no case "law" on the issue here worth considering. Some seven cases have been cited pro and con, the most that can be found in a period of thirty-four years from 1926 to 1960. We believe they can be accurately summarized as follows: *Van der Horst* is concededly not in point. There are three cases cited as favoring the board's position here: *Fleischmann* is a doubtful precedent of uncertain meaning where one of two patents on a single invention was invalidated on the basis of a priority date to which the other was held entitled; a single judge in *Young* thought the priority date of a patent was its effective date as a reference, recognizing conflict as between two precedents; a single judge in *Sperry-Rand,* briefed on prior cases in letters from counsel but not on the statutory history, took the same view as the board here. On the other side there are also three cases: *Viviani* refusing to follow *Fleischmann* and expressly holding that the priority statute does not apply

to the effective date of a reference; *Celanese* where a Court of Appeals refused to apply the priority date to a reference and said it is "immaterial"; and *Walker-Blumlien* where this 5-judge appellate court held that only the domestic filing date of a reference is effective, in which case the Patent Office Solicitor conceded that to be the law.

If any "weight of authority" is to be found in this we would say the scales tip more than perceptibly in favor of the restriction of U. S. patents *as references* to their filing dates *in the United States,* as stated in section 102(e) and in accordance with "in this country" limitations of 102(a), (g), and the prohibitions of section 104.

But over and above this as a basis of decision we feel there is a paramount principle which controls. The administrative agency known as the Patent Office pursued a uniform policy and interpretation contrary to the new view of the board for the 26 years from 1926 to 1952, at least. That interpretation was well publicized and well known and must be assumed to have been known to Congress in 1952 when it revised and codified the patent statutes into present Title 35, United States Code. In that codification section 119 reenacted R.S. 4887 with no change in substance, as above shown.

This legislative ratification of the interpretation of the statutes by the Patent Office determines the meaning and effect of section 119 for the future. Helvering v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52 (1938), United States v. Dakota-Montana Oil Co., 288 U.S. 459, 53 S.Ct. 435, 77 L.Ed. 893 (1933). Under that interpretation, section 119 does not affect the express provision of 102(e) as to filing *"in the United States"* and the decision of the board that the Swiss filing date of Habicht is the effective date of his U. S. patent as a reference must be reversed.

### Reason for Remand

As our analysis of the board's statements of the issue shows, the board concerned itself with a single question of

law, the effective date of the Habicht patent as a reference under 35 U.S.C. § 102(e) and § 103. The only other question it dealt with was the merits of the rejection, having found Habicht to have an early enough date to be available as a reference. On the merits, it found the invention of all three appealed claims to be obvious within the meaning of 35 U.S.C. § 103. We have not considered that finding because of our decision that Habicht is not available as a prior art reference, which makes it unnecessary to pass on the merits of the rejection based on Habicht in view of Wagner et al.

 Claim 17 was rejected only on the disclosure of Habicht in view of Wagner et al. and since we have held Habicht to be unavailable, the rejection of that claim stands reversed.

As to claims 10 and 16, however, the examiner made an additional rejection (in his Answer it was the *only* rejection of these two claims) as "unpatentable over the count of Interference No. 90,218 now claim 1 of the Habicht patent in view of the Wagner et al reference." (The language is quoted from the examiner's Answer.) So far as we can see, the board failed to deal with this rejection. The only possibility that the board dealt with the rejection on the interference issue is in the paragraph we quoted early in this opinion and described as the board's "third statement" of the issue. We are unable to say whether the board agreed or disagreed with the examiner's rejection on the interference issue in saying "no questions of estoppel or res judicata can be raised concerning" the claimed compounds of appellants.

 Since the board predicated its affirmance of the examiner's rejection entirely on its finding that Habicht was available as a reference to show what the statutory prior art was, since we are reversing on that issue, and since we are unable to ascertain the board's decision, if any, on the other outstanding rejection, we remand this case for clarification of the board's position on the rejection of claims 10 and 16 as "unpatentable over" the interference count in view of Wagner et al.

The decision of the board is reversed and the case is remanded for further proceedings consistent herewith.

Reversed and remanded.

MARTIN, Judge, took no part in the decision of this case.

WORLEY, Chief Judge (dissenting).

It seems to me the majority below has the better of the argument with the majority here. Typical of my misgivings regarding the reasoning and conclusion of the present majority is the effort to fashion In re Walker into a controlling precedent for its position. It would be highly presumptuous of me to assume that merely because of my participation in that decision I became an authority on what the court held. It would be equally presumptuous to assume that I at once became an expert on Congressional intent merely as one of 435 members of the House of Representatives which passed the Boykin Act, or perchance as one of many who suggested or opposed language in that or other measures. The real test of judicial or legislative intent lies in the language employed. What the *court* held in *Walker* is found in its *decision*, and what *Congress* intended is found in the *statute*. In *Walker* this court expressly said:

> The *rejection* by the tribunals of the Patent Office in the case at bar *is based not upon the filing date of Whiteley's foreign application* but upon the adverse award of priority of intention against appellant and in favor of Whiteley, the patentee. (Emphasis supplied).

Thus all else is obviously dicta.

There is no real judicial precedent in the cases cited below or here, save the re-

cent District Court opinion [1] in Eli Lilly v. Brenner where the issue was squarely raised and properly disposed of.[2] In view of the unsettled and conflicting case law when the 1952 Patent Act was passed, it is not possible to ascertain which line of decisions Congress was "legislatively ratifying." Nor am I convinced that under such circumstances Congress was ratifying the then Patent Office practice.[3]

Granted the desirability of following the *status quo*, this court has never been reluctant to depart, in some instances *sua sponte*, from that principle.[4] Thus there is no valid reason in law or logic why this court should prevent the Patent Office from correcting, on its own, what it obviously recognizes to be prior *misinterpretation* of Congressional intent.

While it has been said (see Bate Refrigerating Co. v. Sulzberger, 157 U.S. 1, 15 S.Ct. 508, 39 L.Ed. 601; Webster v. Luther, 163 U.S. 331, 16 S.Ct. 963, 41 L.Ed. 179) that the practical construction given to an act of Congress, fairly susceptible of different constructions, by an executive department of the Government is entitled to respect, and in doubtful cases should be followed by the courts especially where interests have grown up under the practice adopted, it seems to me the meaning of the statute is clear and no prior practice inconsistent with that meaning can be given effect. See Andrews v. Hovey, 124 U.S. 694, 716–718, 8 S.Ct. 676, 31 L.Ed. 557. Antecedent administrative interpretation long in force does not render it impossible for the Patent Office to promulgate a new interpretation changing for the future the earlier practice, particularly when the new interpretation appears to comport with the plain meaning of the statute. See American Chicle v. United States, 316 U.S. 450, 62 S.Ct. 1144, 86 L.Ed. 1591. Section 119 states that a United States application based on a foreign application "shall have the same effect as the same application would have if filed in this country on the date on which the application * * * was first filed in such foreign country." There is no language in Section 119 to restrict that effect in any way, whether for purposes of obtaining a patent or subsequently utilizing that patent as a prior art reference, i. e. evidence of priority as to the disclosed subject matter, to defeat another's right to a patent. It seems to me the majority here legislates into the

1. The author of that opinion is Judge Joseph R. Jackson who rendered distinguished service on this court for many years. He participated in *Walker*, and rejected it as precedent on the issue in *Lilly*.

2. See also Sperry-Rand Corp. v. Knapp-Monarch Co. to the same effect, although that discussion is, as in *Walker*, dicta.

3. The oft-repeated statement that administrative construction of a statutory provision receives legislative approval by reenactment of the provision without material change covers the situation where ambiguities in a statute are resolved by reference to administrative practice prior to reenactment. It does not mean that an interpretation of a provision of one act becomes frozen into another act merely by reenactment of that provision, so that administrative interpretation cannot be changed prospectively through exercise of appropriate administrative discretion. See Helvering v. Wilshire Oil Co., 308 U.S. 90, 60 S.Ct. 18, 84 L.Ed. 101. Nor does it mean that prior construction has become so embedded in the law that only Congress can effect a change. Helvering v. Reynolds, 313 U.S. 428, 61 S.Ct. 971, 85 L.Ed. 1438. Moreover, any assumed acquiescence of Congress to the Patent Office interpretation of R.S. 4887 prior to its 1952 enactment of Section 119 would appear of little import, absent evidence that that interpretation was expressly called to the attention of Congress at the time and expressly adopted. See Sutherland Statutory Construction, § 5109 (3 ed. 1943).

4. See, e. g., Shoe Corp. of America v. Juvenile Shoe Corp. of America, 266 F.2d 793, 46 CCPA 868, reversing Patent Office practice and judicial precedent which had stood for over 30 years. See also In re Bremner, 182 F.2d 216, 37 CCPA 1032; In re Nelson, 280 F.2d 172, 47 CCPA 1031; In re Wilke, 314 F.2d 558, 50 CCPA 964; In re Palmquist, 319 F. 2d 547, 51 CCPA 839; In re Manson, 333 F.2d 234, 52 CCPA 739, many of which are discussed in Brenner v. Manson, 383 U.S. 519, 86 S.Ct. 1033 (1966).

statute words of limitation which Congress has not placed there. That it cannot do. Bate Refrigerating Co. v. Sulzberger; Electric Storage Battery Co. v. Shimadzu, 307 U.S. 5, 14, 59 S.Ct. 675, 83 L.Ed. 1071.

I would affirm.